Isaac M. Weston v. Judge of Probate of Kent County.

*Elections—Statute providing for recount of votes cast—Municipal corporations—Authority of common council.*

Act No. 293, Laws of 1887, providing for a recount of votes in certain cases, does not apply to a city whose common council is charged with the duty of canvassing the votes cast for, and given the exclusive right to determine the election and qualification of, the officers whose election is sought to be contested, which duty it has discharged, and right exercised, without objection by any one.

Application for *mandamus* to compel respondent to dismiss certain proceedings pending before him under Act No. 293, Laws of 1887, for a recount of the votes cast for mayor of the city of Grand Rapids. Submitted April 17, 1888. Granted April 25, 1888. The facts are stated in the opinion.

*Blair, Kingsley & Kleinhans,* for relator.

*J. C. FitzGerald* and *R. W. Butterfield,* for respondent.

Sherwood, C. J. At the recent municipal election in Grand Rapids, the relator was a candidate for mayor upon the Union ticket, Charles E. Balknap on the Republican ticket, and Bertram W. Bernard on the Prohibition ticket.

Section 20 of title 2 of the charter of the city of Grand Rapids, relating to elections of officers, provides that—

"The common council of the preceding year shall convene on the Thursday next succeeding such election, at 2 o'clock in the afternoon, at their usual place of meeting; and the statements of votes filed with the clerk of the city by the inspectors of election shall be produced by said clerk, when the common council shall forthwith determine and certify, in the manner provided by law, what persons are duly elected at the said election to the several offices respectively. * * * All officers elected, as hereinbefore provided,

shall enter upon the duties of their respective offices on the first Monday of May next following such election, unless otherwise herein provided."

Acting under this provision, the common council met on April 5, and canvassed the vote, and decided that the relator had received 4,605 votes, Mr. Belknap 4,596 votes, and Mr. Bernard 145, making a plurality of nine votes for the relator. The common council thereupon unanimously determined and certified that the relator had been elected to the office of mayor for the year commencing on the first Monday of May, 1888. A certificate of election was accordingly issued, and on April 6, he filed his acceptance and oath of office with the city clerk, and is now mayor elect under the action of the council.

On April 6 Mr. Belknap filed with the judge of probate for Kent county a petition which purports to be made under Act No. 293, Laws of 1887, praying that all the ballot-boxes used at the election might be brought before a board of examiners, to be appointed by the probate judge, and by them opened, and the votes recounted for mayor. He named his representative on this board of examiners.

Upon the filing of the petition the probate judge made an order fixing April 13 as the time when the board of examiners should meet, and the ballot-boxes be produced and opened by them, and he caused notice to be given to the relator to appoint a member of the board of examiners on Monday, April 9, at 10 A. M. On the last-named day the relator appeared specially before the judge of probate, and moved that all of the proceedings be dismissed for the following reasons:

1. That the common council of the city of Grand Rapids has determined that the relator was elected mayor at the election.

2. That the common council of the city was the sole and only judge of who was elected mayor, and alone had the power to decide any contest relating thereto.

3. That neither the probate court nor the probate judge had any authority or jurisdiction in the premises.

4. That Act No. 293, above mentioned, did not apply in case of a contested election for mayor of the city of Grand Rapids.

The probate judge overruled the motion, and, upon the relator declining to name a representative on the board of examiners, the probate judge himself selected the remaining two members. Thereupon the relator applied to this Court for a *mandamus* to compel the probate judge to dismiss the proceedings.

An order to show cause was granted. Return has been made thereto by the judge of probate, and from which it appears the foregoing proceedings stated were those occurring before him down to the time the order was served.

The object of the act seems to be very well expressed in its title, which reads as follows:

"An act to preserve evidence of error or fraud in the counting of ballots, and in election returns, and in the count of inspectors of elections, and the declaration of the board of canvassers, in contested elections."

It is evidently intended, in the manner and form prescribed in the body of the act, to ascertain, if desired by the parties who are interested as candidates in contested elections, and perpetuate, the evidence of the acts and doings of those charged with the duty of conducting the elections when they occur, and of the count made of the ballots cast for and against any candidate at such election by the inspectors thereof, or by those whose duty it may be to make such count of the votes.

Title 10, § 4, of the charter of Grand Rapids, provides that—

"The common council shall be the judge of the election and qualification of its own members, and to decide upon and determine contested elections of members thereof."

And title 3, § 1, says:

"The mayor and aldermen of said city shall constitute the common council."

It is claimed by the relator that these sections of the charter are conclusive of the action to be taken by the council, and that its action in his case is final as to his election, and that Act No. 293, Laws of 1887, does not apply to his case, or to a contest for the mayorality of Grand Rapids. He sets up the further fact in his petition that subsequent to the count of the votes, and return being made as required by law, and after the votes had been announced at all the polling places, some of the ballot-boxes containing the votes were taken from their proper places of deposit and custody by unauthorized persons, and handled by them when they were unsealed; that they were carried about the city from place to place in a hack by such persons, in the night-time; and that they were afterwards returned by them, or some other persons, to the place from which they were taken.

These facts are brought to the attention of the Court, for the reason that the act makes the count on this proceeding conclusive, without any power, as held by the judge of probate, to determine before him the unwarranted interference with the custody of the ballot-boxes.

Anything, however, prejudicial to the relator arising from such interference is denied by the return of the respondent.

We are all of opinion that the provisions of the act of 1887 do not apply to the present case as made by Mr. Belknap in his petition to the judge of probate.

The following are the material provisions of the act of 1887, relating to this controversy, and under which the proceedings before the judge of probate are taken:

"SECTION 1. *The People of the State of Michigan enact,* That any candidate voted for at any election in this State, intending to contest the same, may, after the decision of the board of. canvassers, and without waiting to commence *quo*

· *warranto* proceedings, by petition to the probate judge of the county in which the election is held, cause the ballot-boxes, or such number of them as he may specify in his petition, to be brought before the board of examiners created by section six of this act, and by said board to be opened and the ballots therein counted : *Provided,* That at the time of filing such petition he shall deposit thirty dollars with such judge of probate, which amount shall be disposed of as hereinafter provided.

" SEO. 2. Said petition shall set forth that the petitioner was a candidate for the office claimed by him, and by him intended to be contested, and that he received votes therefor; that he has good reason to believe, and does believe, either—

" *First,* That there was error or fraud in the count or in the returns of the inspectors of elections; or,—

" *Second,* That there was error or fraud in the count or determination of the board of canvassers; or,—

" *Third,* That there was error or fraud in both; and that it is his *bona fide* intention to contest the count and returns of the inspectors of election, or the count or determined result of the board of canvassers of said election, or of both; and further stating that he believes that unless the ballot-boxes are opened and the ballots therein counted without unnecessary delay his rights will be jeopardized. Said petition shall be in writing, and shall be subscribed and sworn to by the petitioner, or by some one in his behalf, and a copy thereof shall be served upon the person or persons who were candidates for said office at said election.

" SEO. 3. Upon the filing of said petition the probate judge shall notify the members of the board of examiners created by section six of this act of the filing of the said petition, and shall in the notice appoint a time and place for the board of examiners to meet, and shall issue an order causing the ballot-boxes to be brought before the board of examiners created by section six of this act at a place and at a time specified in the order, which shall not be less than two, nor more than ten, days from the issuing thereof; and a copy of said order shall be served upon the persons whose election is to be contested, and also upon the officer in whose custody is kept the ballot-boxes of said election, whose duty it shall be to produce said boxes before said board of examiners at the time and place named in said order.

" SEO. 4. Upon the day and at the place specified in the order the boxes shall be brought before the board of examiners created by section six in [of] this act, and opened by and

in the presence of the board of examiners and the judge of probate, and the ballots therein shall be counted by said board. And the board of examiners above mentioned shall proceed to count the ballots in said boxes, and continue the same from day to day until the completion of the count thereof, and shall make a statement in writing of the result of the said count, and each member thereof shall sign the same, and it shall be sworn to by each member of said board before the judge of probate, and the said sworn statement shall be deposited by the judge of probate in the office of the county clerk, and shall be conclusive evidence in any subsequent proceeding at law of the ballots cast in boxes so opened.

" SEC. 5. After the ballots are counted they shall be placed back in the boxes, and sealed up by said board, and returned to the officer who is by law intrusted with the custody thereof.

" SEC. 6. The board of examiners to carry into effect the provisions of this act shall consist of three persons, who shall be electors of the county in which proceedings are had, one appointed by the candidate presenting such petition, one by the candidate opposed thereto, and one by the judge of probate. They shall sit together before the judge of probate [probate judge] at the time and place specified in his order, and said probate judge shall preside over all meetings of said board in accordance with the provisions of this act. If the candidate presenting such petition, or the candidate opposed thereto, shall decline to so chose a member, then the judge of probate shall designate, and the three thus chosen shall constitute the board of examiners: *Provided, however*, that when there is a recount demanded of the ballots cast for the office of judge of probate, then the county clerk shall serve in the place of the judge of probate, and perform the duties herein imposed upon the judge of probate in other cases."

The statute seeks to perpetuate the evidence of certain facts occurring, and certain results reached, at contested elections, when desired by parties interested, where the count made by the board of canvassers is not satisfactory, and such parties intend to continue the contest, in cases where the action of the board is not made final and conclusive, and reasonable objection has been made thereto and notice thereof given; and the statute directs the mode and manner in which it may be done.

In cases, however, where, by the express language of the law governing the municipality, there is no chance for further contest before the canvassing board, and, as in this case, where the common council are charged with the duty of making the canvass of the votes, and are given the power and exclusive right to determine the qualification of its officers and the election of its members, and it has discharged that duty and exercised that right without objection by any one, it is very clear no further contest can be made, and that the statute above referred to does not apply. Such are the provisions of the organic law of the city of Grand Rapids, and until they have been repealed, as has been done in some other instances in the State, no proceedings can be had in the premises before the probate court.

No such general repealing clause is contained in the act, removing the objective provisions contained in the city charter of Grand Rapids relating to the election of mayor, and this Court cannot, in any action it may take, supply one. Such being the case, no object can be accomplished by a continuance of the proceedings commenced before the judge of probate in Kent county, who is without jurisdiction in the premises, and could do nothing affecting the legal *status* of the relator in his office as mayor of the city.

There is no occasion for considering the other questions and bearings of the case presented to us in the briefs and arguments before us by the learned counsel.

The writ of *mandamus* must be granted, directing the judge of probate to quash and dismiss the proceedings in this matter now pending before him, and that said court take no further proceedings under the law of 1887, above referred to, against the relator so far as relates to his election to the office of mayor of the city of Grand Rapids. And as the proceedings seem to have been taken by relator, and conducted upon both sides, in good faith, and with a view only,

by the parties interested, to ascertain their legal rights under a new statute, no costs will be given.

MORSE and LONG, JJ., concurred.    CHAMPLIN and CAMPBELL, JJ., did not sit.