SAMUEL W. VANCE v. THE BOARD OF CANVASSERS OF ST. CLAIR COUNTY.

*Elections—Circuit judge—Recount.*

Act No. 208, Laws of 1887 (3 How. Stat. § 234*a*), which provides for the correction of frauds and mistakes in the canvass and returns made by inspectors of elections, does not apply to the office of circuit judge.

*Mandamus.* Argued April 25, 1893. Granted April 28, 1893.

Relator applied for *mandamus* to compel respondent

to canvass the returns of election for the office of circuit judge as filed in the office of the county clerk. The facts are stated in the opinion.

*A. E. Chadwick* (*C. A. Kent, H. W. Stevens, W. T. Mitchell, A. R. Avery,* and *Forrest & M'Cutcheon,* of counsel), for relator.

*John Atkinson* (*George H. Durand, Frank T. Wolcott, Thomas Wellman,* and *D. P. Foote,* of counsel), for respondent.

McGRATH, J.  At the recent spring election relator was a candidate for circuit judge of the thirty-first judicial circuit, comprised of St. Clair county. O'Brien J. Atkinson and William M. Cline were opposing candidates. When the board of canvassers for the county of St. Clair convened, O'Brien J. Atkinson presented a petition to said board for a recount under Act No. 208, Laws of 1887 (3 How. Stat. § 234*a*). Upon filing said petition the board proceeded to open the ballot-boxes and recount the votes cast in certain districts. Relator asks for an order directing said board to canvass the returns as filed in the office of the county clerk, and to make return to the State Treasurer accordingly.

The writ must issue as prayed. The attempt was made upon the hearing to distinguish the present case from *Weston v. Probate Judge,* 69 Mich. 600; *Naumann v. Board of Canvassers,* 73 Id. 252; *Wheeler v. Board of Canvassers,* 94 Id. 448; and *Belknap v. Board of Canvassers,* Id. 516,—on the ground that in each of these cases the controversy arose as to membership in a body vested with authority and power to judge of the election and qualifications of its members. There is no force in this contention. Act No. 208 enlarges the powers of boards of canvassers, provides for a review of the action of the inspectors of

election, attaches a certain measure of finality to the action of the board, and contemplates jurisdiction by the courts of matters arising during such review.

The theory of the cases cited is that, inasmuch as another tribunal for that review has been provided by law in that class of cases, and the act in question does not in terms qualify the powers granted to such tribunal or limit the scope of the inquiry to be made by it, jurisdiction is exclusive in such tribunal, and boards of canvassers and the courts are without power in the premises. The very terms of the act itself exclude any inference of its appli-cability to that class of cases. It limits further inquiry to fraudulent or illegal voting or tampering with the bal-lot-boxes before the recount. It provides that " any can-didate *not receiving a certificate of election* may, for errors. apparent on the face of the returns, have the same exam-ined and corrected upon *certiorari* to the circuit court of the county." As was said in *Newton v. Board of Can-vassers,* 94 Mich. 458:

" What is open to review is evidently the proceedings which have antedated the determination or issue of the certificate."

No certificate is issued to a State officer or circuit judge except by the Board of State Canvassers. The act clearly contemplates that the writ shall run against the board of canvassers, who have acted upon the erroneous returns, and not against the Board of State Canvassers, who do not have before them the returns complained of.

The doctrine of the cases cited is as applicable to that. class of cases where the power of final determination is lodged in a special statutory board as to the cases where the election relates to membership in a body vested with the power of final determination. Cooley, Const. Lim. (6th ed.) 785. The principle upon which these cases rest was announced in *Royce v. Goodwin,* 22 Mich. 496, 501,.

where the controversy arose over the title to the office of circuit judge. There the Court say:

"The Constitution does not permit the regularity of elections to the more important public offices to be tried by the courts. It has provided that in all cases where, by the Constitution or by statute, the result of elections is to be determined by the Board of State Canvassers, there shall be no judicial inquiry beyond their decision."

Again, in *People v. Harshaw*, 60 Mich. 200, 202, it is said:

"Our Constitution in express terms vests all the judicial power in courts, and no such power can exist in a legislative body. It has nevertheless been deemed wise, to avoid the delays and difficulties of legal disputes, to provide for a final adjudication of the title to office, not only of members of the Legislature, but of all the State officers *and judges,* either in the houses of the Legislature or in the Board of State Canvassers."

Our statute (How. Stat. § 248) makes it the duty of the county clerk of each county to certify the number of votes cast for circuit judge to the State Treasurer. Section 249 requires the Board of State Canvassers to proceed to the canvass and determination of the election of circuit judges. Section 4 of article 8 of the Constitution makes it the duty of the Board of State Canvassers to determine the result of all elections "for State officers *and of such other officers as shall by law be referred to them;*" and section 5 provides that, "when the determination of the Board of State Canvassers is contested, the Legislature in joint convention shall decide which person is elected." In the cases cited the inhibition is statutory; here it is constitutional.

In view of these constitutional and statutory provisions, it is unimportant whether or not circuit judges are State officers within these provisions of the Constitution. It is sufficient that the determination of the result of elec-

95 MICH.—30.

tions for circuit judges is by law referred to the Board of State Canvassers. Contests respecting the title to that office must be made before the Legislature. That body finally determines the very matters which the board of canvassers in the present case propose to pass upon. As was said in *Newton v. Board of Canvassers:*

" There can be no doubt of the right of the Legislature, in joint session, to ascertain, by means of the best evidence attainable, the actual state of the vote."

The best evidence is the ballots themselves. The House of Representatives of the United States has on more than one occasion exercised this authority, and has sent its committees into representative districts to recount the ballots; and the present House of Representatives of our own Legislature recently sent its committee into legislative districts to make investigations relating to contests respecting its own members.

The other Justices concurred.