STATE, EX REL. DON L. LOVE, APPELLANT, V. P. JAMES COS-
GRAVE, COUNTY JUDGE, APPELLEE.

FILED OCTOBER 9, 1909.    No. 16,281.

1. **Statutes:** CONSTRUCTION. In order to determine the meaning of the language of an act of the legislature, it is proper to examine the course of legislation upon the same general subject, and to consider in what connection and with what context it has theretofore been employed.

2. **Cities:** ORDINANCES: POWER TO ENACT: CONSTRUCTION. Where power has been granted by the legislature to a municipal corporation to enact ordinances for certain purposes and the city acts within the limits of that power, its action will be of equal force within the corporate limits as if taken by the legislature itself. And the same principles will apply in the construction of such an ordinance as if it were a special statute upon the same subject.

3. ———: CITY COUNCIL: QUESTION OF ELECTION OF MEMBERS. An act of the legislature giving the city power by ordinance "to decide contested elections" does not make the city council the sole judge of the election of its own members.

4. **Quo Warranto:** CONCURRENT REMEDIES. Under the constitution and laws of this state, the remedy of contest of elections and *quo warranto* are cumulative and concurrent. *State v. Frazier*, 28 Neb. 438.

5. **Statutes: GENERAL AND SPECIAL ACTS.** While a special act upon a
   subject usually modifies a general act on the same subject, still,
   if a remedy provided by the later act is not incompatible with the
   remedy provided by the earlier and more general law, both acts
   may stand.

6. **Elections: CONTESTS: CUMULATIVE REMEDIES.** Where a new remedy
   is provided by statute for an existing right, and it neither denies
   an existing remedy, nor is incompatible with its continued exist-
   ence, the new remedy should be regarded as cumulative, and the
   person seeking redress may adopt and pursue either remedy at his
   option.

7. ——: ——: ——. The right to contest the election of a city
   officer before the city council of Lincoln under an ordinance of
   that city and the right given by the general election law to con-
   test the election of city officers in the county court are cumula-
   tive remedies, and the contestant may elect to proceed in either
   manner.

APPEAL from the district court for Lancaster county:
WILLARD E. STEWART, JUDGE. *Affirmed.*

*Flansburg & Williams*, ror appellant.

*T. J. Doyle* and *G. L. De Lacy, contra.*

LETTON, J.

At the general municipal election held in the city of
Lincoln on the 4th day of May, 1909, Don L. Love, relator,
and Robert Malone were candidates for the office of mayor
of the city of Lincoln. As a result of the canvass of the
returns of the election made by the mayor and council as
a canvassing board, it was declared that the relator had
been duly elected to the office of mayor of the city, and a
certificate of election was issued to him by the city clerk.
He thereupon took the oath, entered upon the possession
of the office and is still acting in that capacity. On the
14th day of May, 1909, Robert Malone filed his petition
in the county court of Lancaster county, before P. James
Cosgrave, county judge, seeking to contest the election of
the relator to the office of mayor. A petition was filed,
and summons issued and served upon the relator, who

objected to the jurisdiction of the court on the ground that the determination of the right to the office of mayor was vested exclusively in the mayor and council of the city of Lincoln, and that their decision declaring him entitled to the office was conclusive. This objection to the jurisdiction was overruled, and the cause retained for trial, whereupon the relator brought this action in the district court for Lancaster county, praying that a peremptory writ of mandamus be issued directed to the respondent, P. James Cosgrave, as county judge, commanding him to dismiss said contest of Robert Malone against Don L. Love for want of jurisdiction, and to proceed no further in the case.

The petition alleged that prior to the election there was in full force an ordinance of the city prescribing the manner of contesting elections for city officers before the city council, and providing that the certificate of election should be withheld until the matter was finally determined by that body, when it should be issued to the party found to be entitled thereto; that Malone was present at the canvass of the vote, made no objection thereto, and gave no notice of any intention to contest the election. It further alleges that the court was without jurisdiction to determine the contest after the certificate of election had been issued to the relator; that the hearing, if had, will extend over a long period of time, will require the examination of upwards of 8,000 ballots and over 50 poll-books and the examination of many witnesses, and will cause much useless expense; that, the court being without jurisdiction, no valid judgment for costs could be rendered in his favor, and that the proceedings in all particulars would be void. The answer of the respondent substantially admits the allegations of the petition, except those with respect to want of jurisdiction, which, it pleads affirmatively, rests alone in the county court. Upon these issues the district court found that the county court had jurisdiction, and dismissed the proceedings, from which judgment this appeal has been taken.

By the provisions of section 129 of the act under which the city of Lincoln is now governed, the city is granted power by ordinance "to appoint judges and clerks of election provided by ordinance for the election of city officers, and prescribing the manner of conducting the same, and the returns thereof, and for deciding contested elections, and for holding special elections for any purpose herein provided, and to fix a compensation for all officers of election." Laws 1901, ch. 16, sec. 129, subd. 48; Ann. St. 1907, sec. 8076. A similar provision was included in the charter act which was in force in 1895. In the latter year an ordinance was adopted by the city, which is set forth in relator's brief, as follows: "That whenever any candidate for any office, or any elector, chooses to contest the validity of an election of any officer, he shall, within two days after the closing of the polls give notice in writing to the person whose election he intends to contest of his intention so to do, a copy of which notice shall be filed with the city clerk before the time fixed for the canvass of the returns as hereinbefore provided for; and the said council shall, immediately after the canvass of the returns, or at a subsequent time to be fixed by them, and before the result of said canvass is declared, proceed to hear the contestants, as hereinbefore provided. All such contests before the city council shall be governed by and conducted in accordance with the general statutes of the state of Nebraska relating to contests of election, and when the mayor and council shall receive notice of any contest, they, together with the city clerk, shall withhold the certificate of election until the matter shall be finally determined by the council, when the certificate of election shall be issued in accordance therewith." Section 71 of the general election law (Comp. St. 1907, ch. 26) provides: "The county courts shall hear and determine contests of all other county, township and precinct officers, and officers of cities and incorporated villages within the county." It is contended by the relator that the act of 1887, providing for the organization of the government of cities, and con-

ferring power upon the council to pass ordinances for "deciding contested elections," which power was exercised by the passage of the ordinance above referred to, constituted a repeal, within the corporate limits of the city of Lincoln, of the general law providing for contests of election of city and village officers, and that the jurisdiction thereby conferred upon the city council is exclusive, while the respondent contends: First, that the ordinance itself evinces no such purpose; second, that it is beyond the legal power of a city to repeal by ordinance a general law of the state.

In order to determine the meaning of the language used by the legislature, it is proper to examine the course of legislation upon the same general subject, and to consider in what connection and with what context it has been theretofore employed. The exact language we are considering, first appears in the legislative history of this state in an act entitled "An act to incorporate cities of the second class," approved March 1, 1871, by which act the city was given power to enact ordinances "to appoint judges of all elections provided by ordinance for the election of city officers, and prescribing the manner of conducting the same, and the return thereof, and for deciding contested elections, and for holding special elections for any purpose herein provided." Laws 1871, p. 26, art. III, sec. 13. In March, 1879, a new act was passed (laws 1879, p. 193), omitting the provision giving power to the council to decide contested elections, and at the same session the present general election law was passed (laws 1879, p. 240), which confers upon the county court the power to hear and determine contests of the election of officers of cities and incorporated villages within the county, and which further provides the method of procedure in the courts. At the end of this session of the legislature, therefore, the power to decide contested elections as to city officers had been taken from the city council and vested in the county court. In the act of March 1, 1883, which provided for the organization and government of cities

containing between 10,000 and 25,000 inhabitants, the language of the earlier act was again inserted (laws 1883, ch. 16, sec. 52, subd. 12), and in 1887 an act providing for the government of cities of more than 25,000 and less than 60,000 inhabitants was passed (laws 1887, ch. 11, sec. 68, subd. 26), containing the identical language used in the acts of 1871 and of 1883. No change in this respect has since been made.

Up to the time of the passage of the general election law in 1879 no tribunal was provided by statute in which a contest for the election of city officers could be had, unless one had been established by the city council under the general power to enact ordinances "to decide contested elections." In 1879 this power was withdrawn, but in 1883 it was again conferred, and, in our opinion, still exists.

It is said, however, that it is beyond the power of the city to repeal by ordinance a general law of the state. There is no doubt that this is true with reference to some general laws, but it is not true as to all. Penal statutes passed under and by virtue of the police powers of the state may not be limited or cut down in their operation by ordinances passed by municipal corporations under the police power. It could never be the intention of the legislature to grant powers which might be used to abrogate and nullify the existing general laws upon such subjects, though it has been held the city may impose additional penalties. But as to such matters as might be, and have in the past been, committed to the control of the corporate authorities, but as to which the state has later assumed control, an act reconferring the power upon the municipal authorities is not inconsistent with the general law, and an ordinance passed in pursuance of such power will have the same effect within the limits of the city as if it had been passed by the legislature itself. 1 Smith, Modern Law of Municipal Corporations, sec. 522; Ingersoll, Public Corporations, p. 236; 28 Cyc. 365, 366. If the ordinance is repugnant to the general law, the general law

will yield, or, if not repugnant, the general law may be modified. This is upon the recognized principle that general legislation upon a particular subject must give way to special legislation upon the same subject. *State. v. Mayor*, 33 N. J. Law, 57; *State v. Clarke*, 25 N. J. Law, 54; *In re Snell*, 58 Vt. 207; *Goddard, Petitioner*, 16 Pick. (Mass.) 504, 28 Am. Dec. 259; *Village of St. Johnsbury v. Thompson*, 59 Vt. 301, 59 Am. Rep. 731. From this view of the history of the legislation, and following the principle that, where power has been granted by the legislature to a municipal corporation and it acts within the limits of that power, its action will be of equal force as if taken by the legislature itself, we have no hesitation in holding that the city council by the passage of the ordinance in question, exercised a power granted to it by the legislature, and that it has jurisdiction to consider and decide contests relating to the election of city officers.

But respondent contends that the language "To appoint judges of all elections provided by ordinance for the election of city officers, and prescribing the manner of conducting the same, and the return thereof, and for deciding contested elections" should be construed to apply only to elections provided by ordinance for the election of city officers other than those whose election is required by statute, and that, since the charter permits the creation of other city officers who may be elected, the provisions of the act and of the ordinance apply only to them, and not to city officers whose election is prescribed by statute. But we find no authority in the statute given to the council to provide by ordinance for the election of any officers other than those named therein, and by the provisions of section 26, ch. 16, laws 1901 (Ann. St. 1907, sec. 7925), it is provided that "the mayor shall have power by and with the consent of a majority of the council to appoint all officers that may be deemed necessary in the administration of the city government, other than those provided for in this act." We think, therefore, this construction is unwarranted.

16

The main argument of the relator is that, while the language of the statute does not say so in express terms, yet its effect is to make the city council the sole judge of the election and qualification of its own members, and therefore that its determination is final and conclusive. In one of the first acts passed in this state incorporating cities it was expressly provided that the council should "be judges of the election, returns and qualification of their own members" (laws 1869, p. 41, sec. 27), but this act was repealed, and, so far as the writer has been able to find this language has never been used in a subsequent act. We think the language now used comes far from implying that the council shall be the *sole* judge of the election of its own members, and that, if the legislature had so intended, it would have so said. Relator cites in support of his contention : *Stearns v. Village of Wyoming,* 53 Ohio St. 352; *Weston v. Probate Judge,* 69 Mich. 600; *Naumann v. Board of City Canvassers,* 73 Mich. 252; *Commonwealth v. Leech,* 44 Pa. St. 332; *Linegar v. Rittenhouse,* 94 Ill. 208, and other cases.

The respondent, on his part, contends that the remedies by *quo warranto* and by contest before the county court under the statute still exist, even conceding that the power is also possessed by the city council under the ordinance. He cites as upholding his contention the following cases: *State v. Kempf,* 69 Wis. 470, 2 Am. St. Rep. 753; *Ex parte Heath,* 3 Hill (N. Y.) 42; *Commonwealth v. Allen,* 70 Pa. St. 465; *State v. Gates,* 35 Minn. 385; *Carter v. Superior Court,* 138 Cal. 150. It would extend this opinion to an unnecessary length to examine and compare these cases. It is enough to say that there is a conflict of authority upon the question as to whether a provision making the city council the judges of the election and qualifications of its own members operates to deprive the courts of their jurisdiction by *quo warranto,* or whether the statutory right of contest only affords a cumulative remedy to that furnished by the common law procedure. Perhaps the better rule is that, unless it is clear and certain that the

legislature intended to deprive the courts of their juris-
diction, the remedy by *quo warranto,* and perhaps of con-
test also, will still exist. Mr. Dillon says in 1 Municipal
Corporations (4th ed.), sec. 202: "It is not unusual for
charters to contain provisions to the effect that the *com-
mon council or governing body of the municipality 'shall
be the judge of the qualifications,' or 'of the qualifications
and election of its own members,'* and of those of the other
officers of the corporation. What effect do such provisions
have upon the jurisdiction of the superior courts? The
answer must depend upon the language in which these
provisions are couched, viewed in the light of the general
laws of the state on the subjects of contested elections and
*quo warranto.* The principle is that *the jurisdiction of the
court remains* unless it appears with unequivocal cer-
tainty that the legislature intended to take it away.
Language like that quoted above will not ordinarily have
this effect, but will be construed to afford a cumulative or
primary tribunal only, not an exclusive one." Under the
constitution and laws of this state relating to *quo war-
ranto,* there is no question but that the remedies by con-
test and *quo warranto* are cumulative, and that the legis-
lature would have no power to take away the right to
apply to the courts to inquire by what right the incum-
bency of an office is held. *Kane v. People,* 4 Neb. 509;
*State v. Frazier,* 28 Neb. 438; *State v. Frantz,* 55 Neb.
167. In this respect we agree with the supreme court of
Wisconsin in *State v. Kempf,* 69 Wis. 470, and other courts
adhering to the same doctrine.

The question remains whether it was the intention of
the legislature to put it within the power of a city council
to take away from the county court the jurisdiction in con-
tested election matters conferred upon it under the gen-
eral election law. The remedy provided by the ordinance
is a summary one. The contestant must file his notice of
contest within two days after the polls close, and before
the returns have been canvassed. Within such a short
time after the closing of the polls it might, under certain

circumstances, be well-nigh impossible for him to acquire any accurate and definite knowledge of what may have occurred at each and all of the many polling places within the city. There are many conditions which may arise which, for the public interest, require a speedy determination of the question as to the person who is entitled to the certificate of election. Where the controversy over the election is confined to a narrow range, or the facts which may determine the contest may readily be ascertained, the summary remedy provided by the ordinance would probably prove effective for the ascertainment of the actual fact and the settlement of the question. Where a contestant believes that the facts showing his right to the office are so clear and positive that the necessary effect of the summary procedure will be to make his title certain, it is to his benefit, as well as to that of the community at large, that the matter should be promptly settled before the issuance of the certificate of election; but where the determination of the question requires the examination of many witnesses, the counting of a large number of ballots, and the settlement of purely legal questions as to the residence of voters and to the right to vote, it is evident that a court is a much safer and more competent tribunal to sit in judgment than the city council would be. The right of appeal from an adverse decision to the district and supreme courts is also given to the contestant before the court, while the determination by the council, if relator is correct, is final.

Repeals by implication are not favored; and, where a later enactment is not repugnant to a former one, it does not repeal the same by implication. While a special act upon the same subject usually modifies a general act, still, where the remedy provided by the later act is not incompatible with the remedy provided by the earlier and more general law, both acts may stand and be enforced. In the case of *State v. Craig*, 100 Minn. 352, the facts were that a city council was given power by ordinance to canvass the result of votes cast in a city election and declare the result,

and was made the judge of election and qualifications of its own members.  A later statute permitted such a contest to be made in the district court.  The court held that the later act did not deprive the city council of jurisdiction over the election contest, but that the remedies were concurrent.  The conclusion reached in that case is in accordance with the principle that, where a new remedy is provided by statute for an existing right, and it neither denies an existing remedy nor is incompatible with its continued existence, the new remedy should be regarded as cumulative, and the person seeking redress may adopt and pursue either remedy at his option.  *Feuchter v. Keyl*, 48 Ohio St. 357; 7 Ency. Pl. & Pr. 373, and cases cited.

We can see nothing incompatible in the concurrent existence of these remedies.  The summary remedy provided by the council may be complete and adequate in many instances, while the longer period of time within which to ascertain the facts and to prepare and present the legal questions involved, and the opportunity to submit the controversy to the deliberate and impartial judgment of the courts may, in other instances, prove the only possible means of eliciting the true facts and administering justice. We are of the opinion that the contestant Malone had the option to avail himself of the summary remedy provided by the city ordinance, or, if he deemed the statutory remedy better suited to the ascertainment and determination of the question involved, he had a right to adopt that method of procedure instead of the other.  This makes inevitable the conclusion that the county court was not deprived of its jurisdiction by the provisions of the charter and by the enactment of the ordinance relied upon by the relator as giving the city council exclusive power to determine the contest.

The judgment of the district court denying the writ is therefore

AFFIRMED.

BARNES, J., dissenting.

I dissent from the conclusion announced by the majority opinion. I am in accord with so much of the opinion as holds that the city council has jurisdiction of the election contest in question in this case. I am of opinion that such jurisdiction is exclusive, and that the writ prayed for by the relator should issue.