## JAMES W. CONOVER v. PUBLIC SERVICE RAILWAY COMPANY.

*Argued June 9, 1910—Decided November 30, 1910.*

1. Paragraph 3, section 1, of chapter 83 of the laws of 1909, entitled "An act to extend and regulate the liability of employers for injury or death to employes in certain cases," approved April 13th, 1909—*Held* not to apply to the employes of street railway companies.

2. The popular and generally accepted meaning of language will be applied to the construction of an act of the legislature in the absence of a legislative intent to the contrary.

3. The public policy of the state as evinced by a consistent course of legislation on a given subject-matter may be invoked to assist in ascertaining the legislative intent.

---

On demurrer to declaration.

Before GUMMERE, CHIEF JUSTICE, and Justices TRENCHARD and MINTURN.

For the plaintiff, *Osborne & Astley.*

For the defendant, *Lefferts S. Hoffman* and *Leonard J. Tynan.*

The opinion of the court was delivered by

MINTURN, J.   The concrete inquiry presented in this case by the demurrer to the declaration is whether paragraph 3, section 1, of chapter 83 of the laws of 1909 (*Pamph. L., p.* 114), popularly known as the Employers' Liability act, applies to the suit of an injured employe of a street railway company, whose injury is admittedly the result of the negligence of a fellow-servant.

The section in question provides, *inter alia,* that the employer shall be liable for the injury or death of an employe, who in the exercise of reasonable care is injured or killed "by reason of the negligence of any person in the service of the employer who has the charge or control of any signal, switch, locomotive engine, or train upon a railroad."

, The facts alleged in the declaration present a situation which, under the well-settled doctrine of the fellow-servant rule, would entitle the defendant to judgment on the demurrer, but which is saved from that result if the act in question furnishes a basis of liability. The insistment is that the act furnishes this basis of liability by the use of the terms "railroad" and "train," which are sufficiently generic in character, taken with the remaining verbiage of the section to indicate a legislative intent to comprehend street railways in the legislative purpose of imposing liability upon the street railway employer.

Upon this question the legislation and the adjudications of other states aid us but little for the reason that the public policy evinced by years of legislation in this state has been to segregate the steam railroad as a class to which legislation of a distinct and appropriate nature in legislative contemplation was directed as applicable and peculiarly appropriate. It began with the very genesis of the system of railroad building, when what is now a system of immense proportions and extensive ramifications was more or less experimental in its operation and financial prospects, and required the liberal aid

of legislation to encourage and develop it. Our tax acts, fixing a basis and mode of assessment and a method of taxation based upon railroad use, is an instance of the adaptation of this public policy, declared constitutional by our courts, which placed the steam railroad for taxation purposes in a class *sui generis*. *State Board of Assessors* v. *Central Railroad,* 19 *Vroom* 146.

So the provisions of the General Railroad act (*Rev.* 1895) are directed entirely to the operation, management and control of steam railroads, while an entirely different system of legislation has been evolved for the direction, management and control of street railways. *Pamph. L.* 1886, *p.* 185.

This legislative differentiation evinces a public policy which it is important to keep in mind in giving to any particular piece of railroad legislation, generically speaking, its appropriate place and its proper construction, for, as has been said in another jurisdiction: "In order to determine the meaning of the language used by the legislature, it is proper to examine the course of legislation upon the same general subject and to consider in what connection and with what context it has theretofore been employed." *State* v. *Cosgrave,* 85 *Neb.* 187.

An illustration of this rule of construction is found in *North Hudson County Railway Co.* v. *Flanagan,* 28 *Vroom* 236 (subsequently affirmed on this point in *Id.* 696), where Mr. Justice Van Syckel, speaking for the court upon this general subject, said: "The act of 1874 respecting railroads and canals makes steam railroads a class by themselves, and many of its provisions exclude the idea that it was intended to apply to horse railroads."

And so, in *Newark* v. *Merchants Insurance Co.,* 26 *Vroom* 146, Mr. Justice Reed, in dealing with the question of street railway taxation, speaking for the Court of Errors, said: "The term 'railway corporation' as it is there employed means those steam railroads which constitute a class well defined and which are treated as a class in our legislative scheme of taxation."

This public policy having been thus asserted and maintained in legislation and adjudication, we must perforce adopt a construction of the act *sub judice* which will accord with it, rather than one which will violate it. *Jersey City Gas Co.* v. *Consumers Gas Co.,* 13 *Stew. Eq.* 427.

We can give to the words "locomotive engine" or "train upon a railway," as employed in this act, the construction contended for by the demurrant, so as to apply it to street railways, only by indulging in a liberality of construction and interpretation radically divergent from the accepted use of the words in popular and colloquial phrase, and totally opposed, as has been seen, to the hitherto legislative and judicial acceptation of the terms. The collocation of these terms, "signal, switch, locomotive engine or train upon a railroad," affords some aid in enabling us to determine the legislative intent by according to them, as we must under the familiar canons of construction, their ordinary and common meaning in the absence of a legislative intent to the contrary; and a similar result is reached by the application of the maxim of construction, *noscitur a sociis. Black Inr. L.* 135; 4 *Bac. Abr.* 26; *Bishop* v. *Elliott,* 11 *Exch.* 113.

The plain inference from this collocation is that the legislature in enacting the legislation in question had in mind that public policy of differentiation between two distinct systems of railroads which has consistently marked the legislation upon the subject, and which has been repeatedly recognized by judicial determination as the declared public policy of the state.

The defendant, therefore, is entitled to judgment on the demurrer.