130 N.J. Super. 522 (1974)
328 A.2d 1
KENNETH R. AYRES, BERNARD L. ZOVLUCK, AND ANDREW A. VACCARO, PLAINTIFFS-RESPONDENTS,
v.
TERRE L. DAUCHERT, DEFENDANT-APPELLANT, AND THE MAYOR AND COUNCIL OF THE BOROUGH OF CRESSKILL, A MUNICIPAL CORPORATION, JOHN V. LYONS AND HARRY RANDALL, JR., AND ROBERT E. McGUIRE, PRACTICING LAW UNDER THE FIRM NAME OF RANDALL, RANDALL AND McGUIRE, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1974.
Decided October 23, 1974.
*524 Before Judges MATTHEWS, FRITZ and BOTTER.
Mr. Kurt E. Johnson argued the cause for appellant.
Mr. Anthony D. Andora argued the cause for respondents (Messrs. Andora, Palmisano & DeCotiis, attorneys).
The opinion of the court was delivered by FRITZ, J.A.D.
This is an appeal by defendant Terre L. Dauchert (Dauchert) from an adverse summary judgment in a suit in lieu of prerogative writs challenging his right to *525 sit as a councilman in the Borough of Cresskill. The precise question presented is whether a councilman  in this case, Dauchert  may extend his term by resigning his seat in order to accept appointment to a different council seat for a longer term, the vacancy of which was also created by resignation.
The facts are neither contested nor complex. Dauchert became a councilman when one Richard Devlin resigned on September 18, 1973, and Dauchert was appointed to serve until December 31, 1973. Pursuant to statute, the balance of the Devlin term was to be filled at the general election of November 1973. Dauchert ran for the seat in that election and was defeated. By letter of November 12, 1973, another councilman, Robert Muir, resigned his seat on the council. The term for which Muir was elected was to expire December 31, 1974. Shortly after Muir's resignation and some 13 days before the expiration of the term of his appointment, Dauchert resigned his interim councilmanic seat and was forthwith appointed to fill the Muir vacancy. It is that appointment which was successfully challenged below and is the subject of this appeal.
The question presented depends upon a determination of an issue that can be simply stated: Is there in the circumstances before us a sufficient potential for prejudice to the public weal that we should, as a matter of public policy, refuse to implement that which appears to us to be the reasonably clear intention of the Legislature in this regard? Resolution of the issue is more difficult. Our concern is more intense because we are satisfied for reasons which will appear that the Legislature expressly countenanced the conduct which was enjoined by the decision below in this case, and yet at the same time we can understand the trial judge's intuitive reaction that such action smacks of perfidy. In the long run, we must measure whether that sense of wrongness  or at least of a potential therefor  is sufficient to support judicial sanctions in the name of public policy.
*526 It is to be noted at the outset that no chicane or fraud is charged here. Plaintiffs simply urge that a method of apparent self-perpetuation such as that they say was here invoked is contrary to public policy, and that this is especially true where, as here, the voters have rejected the candidate at a regular election. On the other hand, defendant urges that the mayor has been charged with the responsibility of filling vacancies in the elective offices, however created, limited by the advice and consent of the council (N.J.S.A. 40: 87-12 and 13), and that public policy suggests he should not be circumscribed in the performance of this obligation by artificial rules limiting his selection of the best person. We make particular mention of this framework for our determination because we do not doubt the overriding public policy opposed to a conflict of interest, private gain motivation or fraud in the execution of the public trust inherent in the holding of public office. Hazlet Tp. Committee v. Morales, 119 N.J. Super. 29 (Law Div. 1972). Irrespective of our conclusion in the situation before us here, we would not hesitate for a moment to declare the illegality of conduct infected with any of those particular diseases. Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433 (1952), cert. den. 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652 (1952), reh. den. 344 U.S. 888, 73 S.Ct. 182, 97 L.Ed. 687 (1952). But these things are for the most part dependent upon the circumstances of the particular case, see Van Itallie v. Franklin Lakes, 28 N.J. 258, 268 (1958), and our review of the record before us satisfies us of the absence here of any of these improper and illegal elements.
Legislative direction is to be found in N.J.S.A. 40A:9-155. Enacted as L. 1971, c. 200, effective July 1, 1971, this statute is as follows:
A member of the governing body of a municipality who resigns his office as such may be appointed to an office or position required to be filled by the governing body unless the office or position was created by ordinance adopted during the term of office of the member so resigning. In cases of any such appointment the salary of the holder *527 of said office or position shall not be increased during the term of office of the member so resigning.
The legislative history of this particular statute, enacted as it was in a general revision of Title 40, contains no reference to the section with which we are involved, although there was a substantial conditional veto to the first enactment of this revision. However, prior statutory history and case law is enlightening.
An ancestor of the present statute is to be found in P.L. 1885, p. 178, set forth in 3 Comp. Stats. 3478, § 79. This legislation directed:
That hereafter no member of * * * common council * * * shall, during the term for which he shall have been elected such member be eligible for election or appointment to any office that is now or hereafter may be by law required to be filled by any such * * * council * * *; provided, however, that this act shall not apply to any offices now required by law to be filled from any such appointing body.
In Doughty v. Scull, 96 A. 564 (Sup. Ct. 1915) (not officially reported), this statute was held to prohibit the extension of the term in office of a councilman by the device of his resigning and accepting in lieu thereof the seat of another councilman who had also resigned.
A general revision of the law of municipalities in 1917 incorporated essentially the same statutory provision. L. 1917, c. 152, Art. XXXVII, § 23 (Laws of 1917, p. 461).
With the adoption of the revised statutes in 1937 the statute was reenacted in precisely the same form except for a minor change in form in the provision concluding the statute. R.S. 40:46-5. Between that enactment and the revision appearing at Title 40A, presently extant, amendments eroded the limitation of the statute, including the following:
* * * provided, nothing herein contained shall prohibit a councilman * * * from resigning as councilman * * * and being appointed to a position required to be filled by the governing body of a municipality during the time for which he was elected such councilman * * *; provided, further, that said position shall have been in existence and continuously filled for 5 years or more prior to the passage of this *528 act or was created by statute; provided, said position was not created during said term of office; and provided further, that the salary of said office shall not be increased during the term for which said councilman * * * was elected.
The courts were again called upon to answer the question presented in Doughty (and here), but this time under N.J.S.A. 40:46-5, as amended. The result was the same: the statute was held to prohibit the resignation of a councilman to accept a different councilmanic seat. Bernstein v. Krom, 108 N.J. Super. 176 (Law Div. 1969).[*] Because of the amendment to the statute which was to occur shortly after Bernstein v. Krom, it is notable that this opinion construed the statute as it did because the amended statute spoke in terms of appointment to a "position" and the court distinguished the council seat as an "office." It is true that the judge in Bernstein v. Krom then said that had the Legislature intended to include "office" in the use of the word "position," he still would have found that public policy precluded the resignation and reappointment proposed in the circumstances of the case before him, but the circumstances of that particular case were sufficiently unique that in his determination in this latter respect he italicized "on the facts of this case."
It is assumed that the Legislature is "thoroughly conversant with its own legislation and the judicial construction of its statutes." Brewer v. Porch, 53 N.J. 167, 174 (1969). It must therefore be presumed to have known of the foregoing legislative history and of Bernstein v. Krom *529 when the present statute, N.J.S.A. 40A:9-155, was enacted.
This present statute, which controls the case before us, is significantly different from its predecessors. In the first place, it is affirmative and permissive in character, whereas the previous statutes all prohibited something. Secondly, the only prohibition presently attaching is against appointing a resigning councilman for the filling of an "office or position * * * created by ordinance adopted during the term of office of the member so resigning." Finally, and considering Bernstein v. Krom, dispositively, the statute is no longer expressed solely in terms of a "position," but the affirmatively expressed competencies of a resigned member are set forth in precise terms of appointment "to an office or position." We have no doubt that the Legislature, presumed to know the case law, clearly intended to express its displeasure with and correct the result of Bernstein v. Krom, decided less than four months before the introduction of chapter 200 of the Laws of 1971.
As against the suggestion of plaintiffs here that the reference in the statute to the creation of an office or position by ordinance and the reference to salaries demonstrates an intent that the statute should apply only to such an office or position, we observe that we see no such limitation in the statute. While the statute does indeed contemplate filling vacancies where an ordinance and salary are involved, the manner in which the present statute differs from the previous statutes, including the addition of the word "office," clearly signifies an intent that it should mean much more than that.
Plaintiffs also urge that we read the statute in pari materia with other statutes, pursuant to the mandate of State v. Green, 62 N.J. 547 (1973). While such recourse is purposeful in "resolving doubts or uncertainties" (62 N.J. at 555), and we find no doubt at all in the intent of the statute before us, a search of statutes in pari materia need look no further than N.J.S.A. 40A:9-23. This section, enacted *530 in the same legislation, prohibits a member of a board of chosen freeholders from filling "any office or position required to be filled by the board" in the first three months subsequent to his resignation. Obviously the Legislature was completely aware of the problem. Had they intended to impose conditions upon the acceptance by a resigned councilman of another "office or position," they would have said so as they did in N.J.S.A. 40A:9-23.
We are implored to protect plaintiffs' view of important public policy by interpreting the statute so as to effectuate that public policy, "unless there is absolute evidence that the legislature intended otherwise." Jersey City Gaslight v. Consumers Gas Co., 40 N.J. Eq. 427 (Ch. 1885). We find no succor for plaintiffs in this entreaty for at least three reasons.
First, reserving for appropriate judicial action the case in which a conflict of interest, private gain motivation or fraud appears, as noted above, and emphatically restating our willingness to prevent that chicane in the circumstances of any given case, we record our belief that the conviction of plaintiffs here and the concern of the judge below that, "To permit such an appointment would mean, taken to its conclusion ad absurdum, that a person would be able to serve his entire adult life on the council, and the public would never have an opportunity to remove him," substantially overstates the problem, and magnifies policy considerations far out of proportion. For such a result to occur, successive, fortuitous, involuntary resignations would have to occur (or "cooperative" voluntary resignations, presumably of the same political faith in any event), and the voters  unable by hypothesis to vote to remove the councilman  would have to sanction the return to office of the errant appointing mayor. Sight is not to be lost of the fact that although it might be said arguendo that the direct influence of the voter on the councilmanic office is somewhat dissipated, the appointing authority remains uninsulated from the heavy imposition of *531 political responsibility and entirely dependent upon the will of the voters for his continuance in office.
As diverted as we may be by a concept which permits a man to resign an office in order to accept an appointment to that same office (but for a longer term), and as naturally suspicious of such conduct as we remain, we are not convinced that the risks are so great we should ignore that which we perceive to be the clear intent of the Legislature or rewrite the legislation so that it may better accord with our views.
Second, for reasons set forth above, we believe the intent of the Legislature to have been clearly expressed and its intention plainly apparent in the statutory revision. In such case it is improper to usurp the function of the legislative branch under the guise of statutory construction. As was said in Wormack v. Howard, 33 N.J. 139 (1960):
* * * But while liberality of construction of remedial legislation is desirable, we cannot ignore the plain meaning of the language employed by the Legislature for as was said in Dixon v. Gassert, 26 N.J. 1, 9 (1958) "It is not our function to legislate; it is our duty to interpret. And in doing so we must give effect to the language employed by the legislative body in order to properly effectuate the legislative design." * * * [at 142]
Bayonne Textile Corp. v. American, &c., Silk Workers, 116 N.J. Eq. 146 (E. & A. 1934), said by plaintiffs to support the proposition that only the most compellingly clear demonstration of legislative intent will serve to override "established policy," also stands firmly for the "fundamental" proposition that "the intention and policy of [the legislative branch], as expressed in the enactment should be effectuated." (At 151). While sound public policy and the weal of the people are the concern of all the government, and the judiciary cannot properly shirk the obligation of this concern, in cases where the Legislature has clearly spoken it is the privilege of that body to establish public policy, and the judiciary must not ignore the policy thus established on the *532 ground that its views differ with those plainly expressed by the Legislature.
Thus, and thirdly, we may impose our views of public policy only where we are truly free to do so: in cases where interpretation and construction of the legislative voice is needed. When the Legislature expresses itself less than perfectly and thereby fails to enunciate matters thought to touch upon public policy, we may and should limit or enlarge the words so as to make them accord with established public policy. This is simply because public policy, once established, carries the credentials of that which is right, and in the doubtful or questionable expression, or in the imperfect statement, we will presume the Legislature intended to do that which is right. Bayonne Textile Corp., supra.
For reasons set forth above, we are satisfied in the matter before us that the legislative expression is quite clear and that we would be judicially legislating were we to do anything but give it effect.
Plaintiffs also argue that the appointment violates Art. II, par. 3 of the 1947 New Jersey Constitution, that every qualified voter "shall be entitled to vote for all officers that now are or hereafter may be elective by the people * * *." Local municipal offices, and the qualifications therefor, were not the concern of the Constitution, and consequently "the power of the Legislature over them is broad and well established." Strothers v. Martini, 6 N.J. 560, 563 (1951). The Legislature has the right to determine whether local self-government shall be provided by elective office. This right includes the right, as well, to determine how vacancies should be filled. N.J.S.A. 40:87-12 and 13 provide for interim appointment to borough council vacancies. The Legislature has thus determined that vacancies in municipal office, as contrasted with original terms, shall be filled by appointment. A vacancy, to be filled by appointment pursuant to the statutes, is not an "elective" situation, enjoying the protection of the State Constitution.
*533 Finally, plaintiffs urge that since the appointment in this case was made on motion from a councilman, rather than by the nomination of the executive, within 30 days after the resignation creating the vacancy, it was contrary to statute and void. In the particular circumstances of this case, including but not limited to the fact that the mayor had nominated Dauchert, but had withdrawn the nomination to accommodate the exact question raised here as to the effective date of the resignation which created the vacancy, we are satisfied that the view of the judge below in this regard, describing these arguments as "technical" and refusing to let form "dominate the substance of reality," is sound. We reject these arguments as he did.
We reverse and declare the legality of the appointment of Councilman Dauchert. No costs.
BOTTER, J.A.D. (dissenting).
Prior to the revision of Title 40, of which N.J.S.A. 40A:9-155 was one of approximately 170 sections in chapter 9 alone (L. 1971, c. 200), N.J.S.A. 40:46-5 generally provided that "during the term for which he shall have been elected or appointed" no councilman could be appointed to an "office" required to be filled by the governing body of which he was a member. However, the statute was amended over the years to allow a councilman to resign from office and be appointed to a "position" required to be filled by the governing body, so long as the position was not created during his term of office and provided, further, that the salary of "said office" was not increased during the councilman's term. Those amendments carelessly employed both terms, office as well as position, in the same statute, without apparent purposeful distinction. Although in Bernstein v. Krom, 108 N.J. Super. 176, 180 (Law Div. 1969), the judge held that the words "office" and "position" were not synonymous in this statute, he also said that "even if the Legislature intended to include `office' in the use of the word `position' in N.J.S.A. 40:46-5," it would not change his holding in the case. Thus, the argument that the Legislature added the term "office" to the statute *534 to overturn the holding in Bernstein v. Krom disregards the term "office" in the preexisting statute and the ultimate reasoning of that case.
As the majority opinion points out, starting in 1885 there was a clear legislative prohibition against appointment of a councilman during his term to "any" office by the governing body of which he was a member. It was held in Doughty v. Scull, 96 A. 564 (Sup. Ct. 1915), that the statute prevented the appointment of a councilman to a longer term than the term for which he was originally appointed or elected. The statute was amended, apparently to permit a councilman to be appointed to some other position (or office), so long as such position or office was not created or its salary increased during the councilman's term, and the Bernstein case made it clear that the appointment cannot be to the same council. The case reaffirmed the view of Doughty, supra, that sound public policy condemned the manipulation by which the term of a councilman might be extended by resignation and reappointment to another vacancy on the same council. The possibility of holding office for successive terms, without ever being elected to such office, is obviously contrary to our basic concept of representative, democratic government. In Dauchert's case, at hand, we have a councilman who was not elected to his first term of office, and who was defeated when the electorate had the chance to pass on his candidacy. This illustrates the insult to the electorate inherent in such tactics, regardless of his qualifications and the political persuasion of those who voted for his reappointment. (In this case the vote was three to one, apparently along party lines.) It has the potential for self-perpetuation by members of a governing body inimical to the electoral process.
In our statutory scheme of government the membership of municipal governing bodies is determined essentially by public election. In the case of boroughs the law provides for the election of a mayor and six councilmen. N.J.S.A. 40: 87-1. Appointment is the exception (N.J.S.A. 40:87-12) and only to fill vacancies until a successor is chosen at the *535 next annual election. N.J.S.A. 40:87-13. The revision of Title 40 did nothing to change this basic mode. For example, in case a vacancy in the membership of a municipal governing body results from a judicial determination ousting someone from office, a special election is called for to fill the vacancy, although an interim appointment may be made. N.J.S.A. 40A:9-162. (If the majority opinion prevails, conceivably even this section might be circumvented by a resignation to avoid ouster, with reappointment to the same vacancy to avoid a special election.) Self-perpetuation of power through manipulated appointments is clearly contrary to the legislative intent expressed by companion statutes. See also N.J.S.A. 40A:9-156, which prohibits appointments to any office whose term is to commence after the expiration of the term of any member of the governing body. We should interpret related provisions of the law "as a homogeneous and consistent whole, giving effect to all their provisions." Watson v. Jaffe, 121 N.J. Super. 213, 214 (App. Div. 1972), quoted with approval in State v. Green, 62 N.J. 547, 555 (1973).
The majority says that a clear intent to change this policy is found in the revision of this section, which is now N.J.S.A. 40A:9-155. I disagree. The section merely simplified the language of the preexisting statute. The prevailing law, as interpreted by the courts, permitted appointment only to offices or positions other than that of councilman. A councilman could not resign his office simply to be appointed to a vacant office with a longer unexpired term on the same council. This rule did not depend upon his being defeated shortly before in the general election. What the statute permitted and continues to permit is appointment by the mayor and his fellow council members of the resigning councilman to some other office or position. In my view nothing in the new statute demonstrates an intent to change this proposition of law. A councilman is elected or appointed for a given term fixed by statute. (N.J.S.A. 40:87-9; N.J.S.A. 40:87-13), and the statutory design is to have him stand for election, *536 or reelection, if he wants to continue in office beyond that term. I do not find it persuasive to say that the public has a means of redress at the polls against a mayor and councilmen who combine to appoint a councilman after he has just resigned from his own expiring term following a defeat at the polls. In fact, this form of redress might not be available against councilmen in a municipality who are elected on a district or ward basis. See N.J.S.A. 40:87-6. How would the electorate of one ward strike back against the abuse committed by councilmen from another ward?
The majority opinion refers to N.J.S.A. 40A:9-23, which prohibits members of the board of chosen freeholders from filling "any office or position required to be filled by the board" until three months after resignation. This statute merely proves that a stricter inhibition is imposed upon freeholders. The exceptions for appointment to the office of county counsel or county treasurer show that what was contemplated by this comparable statute is appointment to some other position. This more restrictive legislative policy, requiring a three-month hiatus, is, nevertheless, harmonious with the statute in question as interpreted by the courts. It is not persuasive to say the Legislature knew how to express those restrictions in clear terms when it wanted to do so. The three-month disability is clear, but the Legislature did not specifically say whether or not a freeholder can resign and be reappointed to a vacancy on the same board of chosen freeholders. This is not a case of one Legislature speaking with different tongues for different effects. N.J.S.A. 40A:9-23 is simply a reenactment of N.J.S.A. 40:21-1, without change in substance. Its origin was L. 1918, c. 185, § 216, when the three-month disability period was first introduced. Considering the preexisting judicial interpretation of the statute which was continued in the form of N.J.S.A. 40A:9-155, there was no need for the Legislature to change its content, unless it wished to overturn that interpretation. If that was the objective, it can be argued even more persuasively that the Legislature *537 should have expressed its intent explicitly. In my view, only the clearest expression of legislative will should be taken to override the important long-standing principles and policy at stake. A purpose opposed to sound public policy, contrary to the spirit of our laws, should not be attributed to the Legislature "except upon the most cogent evidence." Bayonne Textile Corp. v. American Fed'n of Silk Workers, 116 N.J. Eq. 146, 160 (E. & A. 1934). Where the literal interpretation of a statute, as here, conflicts with public policy, it should be assumed, unless the contrary is clearly expressed, that the Legislature did not intend to abrogate that policy. Spencer v. Morris, 67 N.J.L. 500, 502 (Sup. Ct. 1902); Cahn v. Allen, 124 N.J.L. 159, 160 (Sup. Ct. 1940). The import of the words used should be "enlarged or restrained" to comport with long-established policy, unless a legislative intent repugnant to that policy is clearly manifest. Bayonne Textile Corp. v. American Fed'n of Silk Workers, supra; Conover v. Public Service Ry. Co., 80 N.J.L. 681, 684 (Sup. Ct. 1910). See also Robertson v. Railroad Labor Board, 268 U.S. 619, 627, 45 S.Ct. 621, 625, 69 L.Ed. 1119 (1925), where Mr. Justice Brandeis said, in rejecting a literal interpretation of a statute in favor of a more confined application, "It is not lightly to be assumed that Congress intended to depart from a long-established policy."
Obviously, it is not for the courts to assert a policy in defiance of the legislative will. But it is the obligation of the judiciary to interpret a statute harmoniously with the purposes and intent of the entire legislative scheme. New Jersey Builders, etc., Ass'n v. Blair, 60 N.J. 330, 338 (1972), holding that the spirit of a statute will prevail over its literal terms. We should not ignore the provisions fixing the terms of members of a municipal governing body, and the method of election thereto. We must avoid interpreting a statute in a way that produces absurd results. New Capitol Bar & Grill Corp. v. Div. of Employment Security, 25 N.J. 155, 160 (1957). I would not do violence to the overall legislative scheme, nor sanction an affront to the electorate. As *538 stated by Chief Justice Weintraub in the New Capitol Bar & Grill case:
* * * cases inevitably arise in which a literal application of the language used would lead to results incompatible with the legislative design. It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end "words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms." Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 378 (1956); Wright v. Vogt, 7 N.J. 1, 6 (1951); Glick v. Trustees of Free Public Library, 2 N.J. 579, 584 (1949). [at 160]
Thus this dissent. I would affirm the judgment below and invalidate the appointment.
NOTES
[*] Shepard's Citations indicate that certification was denied in Bernstein v. Krom at 55 N.J. 356. This appears not to be so. A companion case, Bernstein v. Thomas, apparently presenting the same question as Krom, was decided the same way in the trial court and affirmed, in an unpublished opinion, by the Appellate Division for the reasons set forth in the Law Division opinion in Krom. It was apparently Bernstein v. Thomas which was denied certification at 55 N.J. 356. Evidently Bernstein v. Krom was not appealed, or if appealed, the appeal was not perfected.