151 N.J. Super. 45 (1977)
376 A.2d 550
NEW JERSEY LAND TITLE INSURANCE RATING BUREAU, AN UNINCORPORATED ASSOCIATION OF NEW JERSEY, APPELLANT,
v.
JAMES J. SHEERAN, COMMISSIONER OF INSURANCE, ET AL., RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 1977.
Decided June 24, 1977.
*47 Before Judges FRITZ, ARD and PRESSLER.
Mr. Joseph M. Clayton, Jr., argued the cause for the appellant.
Ms. Maureen McGrath, Deputy Attorney General, argued the cause for the respondent James J. Sheeran, Commissioner of Insurance (Mr. William F. Hyland, Attorney General; Mr. Stephen Skillman, Assistant Attorney General, of counsel; Ms. Maureen McGrath, Deputy Attorney General, on the brief).
Mr. Stewart M. Hutt argued the cause for the respondent-intervenor New Jersey Builders Association and the intervenor, New Jersey Association of Realtors (Messrs. Hutt, Berkow & Hollander, attorneys).
Mr. Alfred L. Nardelli, Deputy Director, Department of the Public Advocate, Division of Rate Counsel, argued the cause for the respondent Public Advocate (Mr. Stanley C. *48 Van Ness, Public Advocate, Mr. William Gural, Director, Department of the Public Advocate, Division of Rate Counsel, Mr. Ben David Shiriak, Assistant Deputy Public Advocate, of counsel and on the brief).
Mr. William J. Begley filed a statement in lieu of brief for respondents Association of Title Insurance Agents (Messrs. Begley & Begley, attorneys).
The opinion of the court was delivered by PRESSLER, J.A.D.
This controversy arises under the Title Insurance Act of 1974, N.J.S.A. 17:46B-1, et seq., which represents the first comprehensive regulation of title insurance companies doing business in this State and which requires, among other things, that rates charged by such insurers comport with filed rate schedules which have been first approved by the Commissioner of Insurance. The matter before us is the challenge by the title insurance industry to the power of the Commissioner, pending his approval of the initial filings, to require the use of pre-filing rates.
Resolution of the question here raised requires reference to several provisions of the act as well as to the essentially undisputed factual background. First, although the effective date of the act was May 29, 1975, the Commissioner was accorded the express power to suspend the operation of all or any part thereof for a period of up to 90 days thereafter.[1] Further, N.J.S.A. 17:46B-42(d), relating to rate filing, provides for an additional 90-day grace period. The Commissioner having exercised his authority to suspend the operation of the rate filing provisions for the full 90 days, the additional 90-day grace period provided by N.J.S.A. 17:46B-42(d) did not expire until November 26, 1975, *49 namely, 180 days following the stated effective date of the act.
In the meantime, and pursuant to N.J.S.A. 17:46B-46, the New Jersey Land Title Insurance Rating Bureau (Rating Bureau), appellant herein, was formed to represent 18 of the 20 title insurance companies doing business in New Jersey. Rating Bureau undertook the preparation of a rate schedule for its members, discussing its work in progress with representatives of the Department of Insurance during the summer and into the fall of 1975. Its first filing was made on October 20, technical revisions thereof were filed on October 22, and finally, on November 25, the day before the legislatively anticipated effective date of the filed rates, a substantial group of revisions was filed. Obviously the 24 hours remaining after the final filing could hardly have allowed the Commissioner to commence, no less complete, the thorough review contemplated by the act prior to his approval or disapproval of the filed rates. N.J.S.A. 17:46B-45. Accordingly, the Commissioner advised Title Bureau that although the rates were not and could not yet be approved, the title companies could nevertheless use the filed rates pending his further action. He also advised Rating Bureau that pursuant to the discretion accorded him by N.J.S.A. 17:46B-45(a), he would conduct a pre-approval public hearing on the filed rates, which as a matter of fact, represented a generally higher cost for title insurance than previously prevailed.
The public hearing commenced as scheduled on December 15, 1975. At its outset the Public Advocate, supported by other interested parties, applied to the Commissioner for suspension of the filed but not yet approved rates. The Commissioner, persuaded by the oral argument on that application, directed that
* * * the title insurance companies continue the rate structures and procedures of each individual company in existence prior to the filing until a final determination has been made by the Commissioner of Insurance. All rates when finally determined will be made effective *50 as of a specific prospective date to be announced at the time of determination.
It is from that directive that Rating Bureau appeals.[2]
In order to focus the issue, certain negative propositions must be stated. The Commissioner does not suggest that Rating Bureau has been in any way, through dilatoriness or otherwise, responsible for his inaction to date on the filed rates. Nor does Rating Bureau suggest that that inaction is the result of any dilatoriness or other abuse of discretion on the part of the Commissioner. Nor does Rating Bureau seriously argue that the Commissioner was without the inherent discretion to have reversed his initial authorization for the use of the unapproved filed rates, provided only he has the power, here challenged, to require use of the pre-filing rates. It is thus apparent that the present impasse was caused essentially by the Legislature's miscalculation of the time that would be required for ultimate approval of the initial rate filings. In that posture, as Rating Bureau correctly points out, the Commissioner had only the three possible alternatives open to him after the statutory deadline for the effective date of the new rates had passed:
1. To direct the title insurance companies to cease doing business until rate approval.
2. To permit the effectiveness of the yet unapproved filed rates.
3. To require the use of pre-filing rates.
The gross impracticality of the first of the above-stated options, which, if followed, would have effectively halted title *51 transfers in this State, compels its elimination as a viable alternative. There is obviously neither constitutional mandate nor official intransigence here involved which could possibly justify so extreme an action. Thus the only question here involved is whether there is any provision of the act itself or any consideration of public policy which would have compelled the Commissioner to opt for the second alternative and precluded his having opted, as he did, for the third.
Rating Bureau, in arguing that the second alternative was statutorily mandated, relies essentially on the language of N.J.S.A. 17:46B-42(d), which provides in full as follows:
Beginning 90 days after the effective date of this Act, no title insurance company or agent of a title insurance company shall charge any fee for any policy or contract of title insurance except in accordance with filings or rates which are in effect for said title insurance company as provided in this act. [Emphasis supplied]
It construes the use of "filings" in that phrase, which is not modified by the word "approved," as indicating a legislative intent that despite the general requirement of prior approval of filed rates, an initial filing, still unapproved at the time of the expiration of the second 90-day grace period, because of such exigency as here present, would meet the regulatory prescriptions. We do not, however, agree with that construction.
It is, of course, elementary that legislation must be construed consistently with its motivating policy objectives. State v. Gill, 47 N.J. 441, 444 (1966); Ayres v. Dauchert, 130 N.J. Super. 522, 531-532 (App. Div. 1974). Insofar as rates are dealt with by the act, the obvious legislative intention was the termination of the theretofore unilateral rate-fixing power enjoyed by the industry. This intention proceeded from the Legislature's perception that the public interest required the protection of prior governmental determination of the reasonableness of the proposed rates. Thus N.J.S.A. 17:46B-41 explicitly states that the purpose of the rate-regulation provisions of the Act is "to promote *52 the public welfare by regulating title insurance rates to the end that they shall not be excessive, inadequate or unfairly discriminatory." Detailed justification in these terms by the rate filer is required by N.J.S.A. 17:46B-43, and N.J.S.A. 17:46B-44 reiterates the requirement of the ratefiler's compliance with the three-pronged standard of not excessive, not inadequate and not discriminatory. This standard is further defined by N.J.S.A. 17:46B-45(a), which mandates rate approval by the Commissioner only if he finds that the proposed rates are not "unreasonably high" nor "inadequate for the safeness and soundness of the insurer" nor "unfairly discriminatory between risks in this State involving essentially the same hazards and expense elements."
Since prior approval of rates is thus central to the entire statutory scheme,[3] to permit an unapproved filing to take effect, particularly so critical a filing as the initial rate structure, would clearly be tantamount to a sanctioning of the very same unilateral action which the act was intended to proscribe. The reading by N.J.S.A. 17:46B-45(a) proposed by Rate Bureau is, therefore, antithetical to and subversive of the fundamental purpose of the act. In our view, that overriding legislative purpose requires the word "filings" as used in that section to be modified by the phrase "in effect * * * as provided in the act." Since the act requires prior approval, a filing "in effect" must mean, tautologically, an approved filing. Thus persuaded that the act did not contemplate a use by the industry of an unapproved filing in any circumstance, we must now determine the propriety of the Commissioner's decision to require pre-filing rates to be charged pending his definitive action on the filing.
The wisdom of that decision is first suggested by the obvious fact that it represented the only remaining viable *53 alternative. We are, moreover, satisfied that the Commissioner's power to take reasonable and appropriate action in a situation both uncontemplated by the Legislature and imperative of resolution is conferred by express statutory provision. Not only does N.J.S.A. 17:46B-41 mandate liberal interpretation of the rate-making procedure in order to effectuate its purposes, but even more significantly, N.J.S.A. 17:46B-49, providing generally for rate administration procedures, concludes in subsection (d) with this critically relevant directive:
In addition to any powers hereinbefore expressly enumerated in this act, the commissioner shall have full power and authority, and it shall be his duty, to enforce and carry out by regulations, orders or otherwise, all and singular the provisions of this article and the full intent thereof.
We, moreover, regard it as both essential and well settled that the scope of the Commissioner's broad administrative powers conferred by N.J.S.A. 17:1-1, 2 must be construed to include interim rate-making not expressly proscribed by the statute. N.J. State AFL-CIO v. Bryant, 55 N.J. 171, 176 (1969). And see, Allendale Field & Stream Assn. v. Legalized Games, 41 N.J. 209, 217 (1963), emphasizing that regulatory legislation must be so construed as to permit an administrative agency "to achieve the task assigned to it," and hence that "incidental powers reasonably adapted to that end" should be implied.
Finally, and contrary to the contention of Rating Bureau, we are persuaded that no express provision of the act prohibits the action here challenged. Rating Bureau's argument is predicated on the detailed procedural requirements of N.J.S.A. 17:46B-45 for both approval and disapproval. The consequent suggestion is that the interim rate-fixing here involved contravened those provisions. Those provisions are, however, only applicable to rate structuring under the act. That is not what we are here dealing with. What is here involved is only an emergent and transitional *54 measure of limited duration devised to serve the purpose of the act until effectuation of statutorily prescribed rate structures. We perceive neither an ultra vires action nor an abuse of discretion on the part of the Commissioner.
The directive appealed from is affirmed.
NOTES
[1] This authorization was contained in L. 1975, c. 106, § 63, which was not included as a separate section in the codification. It was, however, preserved therein as a note to N.J.S.A. 17:46B-1.
[2] There is little doubt that the directive appealed from is interlocutory rather than final in nature and consequently should have been the subject of a motion for leave to appeal rather than a notice of appeal. Because of the importance of the issue before us, made more acute by the fact that the filed rates have not yet, some 18 months later, been approved, we have heretofore denied respondents' motion to dismiss the appeal on the ground of its prematurity, and we now grant leave to appeal nunc pro tunc. R. 2:4-4(b)(2).
[3] See N.J. Real Estate Title Insurance Study Commission, Report to the Legislature (March 1974); N.J. Real Estate Title Insurance Study Commission, Public Hearing 9 (May 10, 1973).