This suit relates to a conflict between the pastor and some of the deacons of the New Hope Baptist Church. From the bill of complaint, it would seem that the plaintiffs expected, or hoped, that the court would determine the merits of the controversy and would remove from office the offending party; but — even if such an inquiry were within the jurisdiction of a civil court — there seemed no necessity for the court to undertake it. The pastor and the deacons had been chosen by vote of the members of the church to hold office for an indefinite period. According to Baptist custom, the deacons could be removed at any time by the members of the church and others appointed in their stead. While it seems that a pastor holds office during good behavior, yet here the pastor, Mr. Walters, was willing to submit himself to the will of the church. Anything in the nature of an ecclesiastical trial was unnecessary since the members of the church were at liberty to retain or to remove regardless of any misconduct or unworthiness, or the reverse, of any of the individuals concerned. Accordingly, the learned Judge of the Chancery Division ordered an election to be held under the supervision of a master who is both an able lawyer and a distinguished member of the Baptist church. The election was held; the pastor was upheld by a large majority of the members, while the deacons who opposed him were removed from office by a decisive vote. The master reported on the election and the court rendered final judgment in conformity with the report. From the judgment the plaintiffs appeal. The only reason for reversal that is argued relates to the qualifications of the electors. In the absence of a rule to the contrary, all members of a Baptist church have equal voting rights with each other.Randolph v. Mt. Zion Baptist Church, 139 N.J. Eq. 605 (Ch.
1947).
On the evening of the church meeting, counsel for plaintiffs presented to the master a copy of alleged Rules and Regulations of New Hope Baptist Church. Rules 2 and 5 read: *Page 13 
"After becoming members, they are required to make a weekly pledge obligating themselves to the financial upkeep of New Hope Baptist Church by use of Duplex Envelope System. * * *
"Any member three (3) months or 90 days in arrears with his or her pledge shall not be considered a member in good standing and not eligible to make or second motions or vote or take any part in any business meeting."
Counsel also presented a list of 216 members of the church purporting to show the only members qualified to vote underRule 5. Of those so listed, 126 were present at the meeting, while also present were 174 other members whose names were not on the list. The existence of the rules and the accuracy of the list of allegedly qualified members were challenged by counsel for the defendant. It appeared that the list was made up from a record kept by the financial secretary of the church. The master reported:
"Each member is supposed to make an annual pledge, payable in weekly installments through the use of envelopes issued to the member, which envelopes bear an identifying number allocated to the member. * * * They are then supposed to be turned over to an officer who keeps a record of the individual contributions of each member. It is that record which was used as the basis for the preparation of the list of allegedly eligible members. * * *
"That the rule has existed and been known to exist appears certain; it appears equally certain that no attempt whatsoever has been made to enforce it except in the single case of an alleged meeting in February of this year. No report is ever made to the church as to eligible or non-eligible members. No opportunity is given to members to defend themselves, excuse themselves or prove that they are in fact not at fault; the reason therefor apparently being that there has been no need so to do.
"I therefore find and report that in my opinion it would be unjust and inequitable, and totally contrary to the established custom of the church over the years to now require an enforcement of the rule with the resultant disenfranchisement of approximately 60 per cent. of the members without notice or without reasonable opportunity to comply with the rule heretofore not enforced.
"Based upon that impression at the time of the hearing I advised all counsel present that all members of the church would be permitted to vote, but upon request of counsel for the plaintiffs I concurred that the two groups should be counted separately so that the matter might be argued before this court."
Taking this view of the matter, the master permitted all members to vote, whether they were on the list or not. But *Page 14 
he required those members who were unlisted to make a contribution to the church in order to show a continuing interest therein. They did contribute about an average of 30 cents each.
By the consent of all parties and every one else concerned, the election, as well as the entire litigation, was handled in an informal way both by the master and by the Judge of the Chancery Division. No evidence was presented but instead the master permitted a full debate at the meeting, from which he reached his conclusions. Neither the appellants nor the respondent, having consented to this procedure, can now challenge the master's findings of fact.
None of the members of the church had been informed in advance that on this occasion the plaintiffs would insist upon the eligibility rule contrary to the established custom of the church. The members who were not on the list of those qualified to vote, were not given an opportunity to demonstrate that they had actually paid their dues; they were not told how much they were in arrears so that they could pay up.
By a consent order in the cause, the defendant pastor was enjoined pendente lite from occupying the pulpit or taking part in the affairs of the church. This operated to give the deacons' faction control of the funds that were contributed in the ordinary way during the litigation. The financial secretary is one of the plaintiffs. It is not surprising to find that of the members on the financially eligible list, nearly 90 per cent. voted for the incumbent deacons, while none of the members who were not on the list voted for them. Most of the group that supported the pastor obviously were unwilling to entrust their contribution to the opponents of the pastor, and so withheld their contributions until the litigation should be determined, or else entrusted the money to the pastor himself. This course of conduct put them more than three months in arrears at the time of the election, so that they are among the members whose names did not appear on the eligible list. We agree with the master that it would have been inequitable to confine the election to the minority of the members whose names were on the list.
The judgment will be affirmed. *Page 15