111 N.J. Super. 1 (1970)
266 A.2d 593
HOPEWELL BAPTIST CHURCH OF NEWARK, NEW JERSEY, ETC., PLAINTIFF-RESPONDENT,
v.
CYRUS GARY, ET AL., ETC., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 18, 1970.
Decided June 22, 1970.
*3 Before Judges SULLIVAN, CARTON and HALPERN.
Mr. Irving I. Vogelman argued the cause for appellants (Mr. Raymond A. Brown, attorney).
Mr. Lance A. Posner argued the cause for respondent (Mr. Burton L. Eichler, of counsel; Messrs. Brach, Eichler, Rosenberg & Silver, attorneys).
PER CURIAM.
Plaintiff church brought this declaratory judgment action in the Chancery Division to determine the validity of a membership vote to sell its present church structure to the Newark Housing Authority and to purchase with the sum realized another church property. Defendants, who are certain named officials of the church, individually and as representatives of the class of those church members voting against the proposed sale and purchase, appeal from the judgment of the Chancery Division declaring the vote to have been valid.
Defendants challenge the findings and conclusions of the trial judge that proper notice was given to the members of the church of the meeting at which the crucial vote was taken and the determination that minors were properly permitted to vote at that meeting.
It was undisputed that it was announced in the official church bulletin for three weeks beginning October 25, 1968 that there would be a special meeting of all members of the church after the Sunday church service on November 10 to vote on the issue of the sale of the church and the purchase of the other building. Nor was it disputed that the church clerk, during the Sunday church services following each of *4 the church bulletin publications, read to the congregation the list of announcements in the bulletin, including that pertaining to the November 10 meeting. It was also undisputed that these bulletins were distributed to each member before Sunday service and additional copies made available in the vestibule.
The controversy, so far as notice was concerned, dealt with whether one of these bulletins was posted on the bulletin board in the church vestibule during the period from October 27 to November 10. The evidence on this issue was in sharp dispute. Plaintiff produced eminent witnesses who testified to such posting. Equally eminent members denied that such notice was placed on the bulletin board or that they had seen the posted notice. The trial judge, although recognizing the impressive testimony on both sides in this conflict of testimony, found that the persuasive weight lay in favor of the contention that the leaflet containing the notice was posted. Our examination of the record satisfies us that there was substantial evidence in the record to support this finding. That the trial judge found the scales tipped only slightly in favor of plaintiff does not affect that conclusion.
The other factual issue resolved in favor of plaintiff's contention concerned the right of the minors present in the church to vote. The final count on the election was 136 in favor of the proposal and 104 opposed. Defendants argue that a new election should be ordered because a number of minors present were improperly permitted to vote. It seems to be settled by customary church practice in the Baptist Church that all members can vote on any church matter, whether or not they are under age, unless there is a local congregation rule or definite custom to the contrary. Randolph v. Mt. Zion Baptist Church, 139 N.J. Eq. 605 (Ch. 1947). The trial judge resolved the conflicting evidence on this factual issue by finding that there was no local rule or custom against minors voting on such church matters as long as they were members of the church. There appears to be no dispute that those who voted were actually admitted to membership under *5 the rules of the church and were on the membership rolls. Here again, the issue to be resolved was one of credibility and we find substantial credible evidence in the record to support the judge's determination that the membership's authorizing the challenged sale and purchase by the trustees of plaintiff church was proper.
Under the circumstances, we find no basis for intruding into the internal affairs of the church by interfering with the voting process adopted by the membership and traditionally used in the past. Such interference would be particularly unwarranted in view of the trial judge's further comment that even if certain minors cast votes improperly, these votes were not sufficient to change the result. Additionally, the proofs were insufficient to demonstrate that any other minors cast votes which would have affected the result.
Our dissenting colleague suggests that all votes of duly enrolled members of the church who have not attained the age of 21 years must be invalid because of the public policy prohibiting persons under that age from making conveyances of real property. This argument dictating that the 21-year-old age limitation be applied uniformly to all real estate transactions regardless of the parties involved overlooks the competing public policy, witnessed by a long-established legislative scheme (Title 16), of permitting voluntary religious associations wide latitude in governing their affairs, both spiritual and temporal. The statutory format guiding Baptist Church procedures indicates that the Legislature, the governmental branch best equipped to discern and enunciate public policy, has refrained from injecting a 21-year-old age limitation into that church's affairs, including those involving real estate transactions.
N.J.S.A. 16:2-11 mandates that Baptist churches be regulated by the general provisions governing religious societies (N.J.S.A. 16:1-1 et seq.) only where the special provisions of N.J.S.A. 16:2-1 et seq. are not controlling. N.J.S.A. 16:2-1 authorizes a "majority vote of the members present" to incorporate a Baptist Church, whereas *6 N.J.S.A. 16:1-1 established a "21 years of age" qualification on the members of other religious societies voting in favor of incorporation. N.J.S.A. 16:1-9, repealed by L. 1955, c. 124, had specifically authorized members "in good, full and regular standing" of the "denomination known as Baptist" to vote in an election for trustees, whereas that same section imposed a 21-year-old age limitation on other religious societies. N.J.S.A. 16:1-13.3, which supersedes N.J.S.A. 16:1-9, evidences increasing legislative deference to the internal affairs of all religious societies by abolishing the age specification formerly imposed and providing:
Any religious society or congregation recognizing no superior judicatory may provide in its by-laws the qualifications for its trustees and officers and may further provide therein the qualifications of members entitled to vote for trustees and officers. * * *
It is the trustees of religious societies, including Baptist churches, who are empowered to convey church property after authorization by the membership. Compare N.J.S.A. 16:1-6 with N.J.S.A. 16:2-8. The manner in which a particular religious society directs its trustees to dispose of trust property depends upon the established rules and regulations of that society. Page v. Asbury Methodist Episcopal Church, 78 N.J. Eq. 114, 116 (Ch. 1910). As noted earlier, the Baptist Church allows all of its members to vote, regardless of age, subject to contrary local custom. Randolph v. Mt. Zion Baptist Church, supra.
Besides a clear legislative scheme evidencing deference to the Baptist Church's governance of its own affairs, the policy fostering a 21-years of age limitation on a party disposing of realty has little relevance to real estate conveyances by large religious associations. It is because minors lack mature judgment that the State provides special protection by establishing an age limitation on their capacity to transfer realty. The need for such protection is lessened greatly when minors, constituting a fraction of the religious society's membership *7 and guided by the wisdom of their elders, are permitted limited participation in affairs concerning realty. Additionally, the trustee system serves as a buffer against unwise decisions attributable to the immaturity and inexperience of minors.
Furthermore, we consider it incongruous to make a distinction, as our colleague does, solely because the church membership is engaged in a real estate transaction. Religious societies are engaged in a wide range of other activities whose importance to the individual member may be as great, if not greater. Indeed, as our Supreme Court recently recognized in Baugh v. Thomas, 56 N.J. 203 (decided June 1, 1970), expulsion from a church "can constitute a serious emotional deprivation which, when compared to some losses of property or contract rights, can be far more damaging to an individual."
The hypothetical hazards resulting from the continued recognition of a religious organization's ability to determine its voting membership is outweighed by time-honored experience which has demonstrated the competence of such societies in handling their internal affairs. Neither the statutes nor the case law impose a 21-year-old age limitation on either the electorate who choose church trustees and authorize their acts or on the trustees themselves who are empowered to convey church realty. Sound policy dictates that this court refrain from establishing such a limitation by judicial fiat.
Since the decision below turned essentially on questions of fact, the resolution of which was properly a function of the trial court, and there was sufficient evidence in the record to support its determination, the judgment is affirmed.
HALPERN, J.A.D. (dissenting).
What the late Judge Jayne said in Mathis v. Holmes, 134 N.J. Eq. 186 (Ch. 1943), bears repeating today: "It is indeed lamentable when those united in their devotion to God, discordantly attempt to sever their accustomed unity in the pursuit of religious worship."
*8 I am in accord with the conclusions reached by the majority except I disagree that the voting by the children on the sale of church property was permissible, and did not taint the vote.
Certain facts in the record should be emphasized. While plaintiff was probably incorporated as a church, its certificate of incorporation is not part of the record  so that we do not know whether it was incorporated under N.J.S.A. 16:1-1 et seq. or N.J.S.A. 16:2-1 et seq., or what special provisions are contained therein, if any, concerning eligibility for membership and voting privileges. See N.J.S.A. 16:2-12.
Admittedly, plaintiff has no constitution or bylaws. The only qualifications for membership and the right to vote are derived from accepted custom practiced by it, or as set forth in the writings of Rev. Edward S. Hiscox wherein the author has presumably recorded Baptist traditions and customs. Rev. James V. McIver, called as an expert witness by plaintiff, recognized Hiscox as such authority but not with respect to the issue of children's voting. It was his opinion that each Baptist church is independent and autonomous, and in the absence of specific provisions to the contrary each member is entitled to an equal vote on all subjects. This is in accord with the holding in many cases  Randolph v. Mt. Zion Baptist Church, 139 N.J. Eq. 605 (Ch. 1947); Geter v. Walters, 5 N.J. Super. 10 (App. Div. 1949); Harrison v. Floyd, 26 N.J. Super. 333 (Ch. 1953); Holiman v. Dovers, 236 Ark. 211, 460, 366 S.W.2d 197, supp. op. 366 S.W.2d 203 (Ark. Sup. Ct. 1963); Annotation 15 A.L.R.3d 297.
Rev. McIver further testified that one becomes a member when (a) recommended by a deacon for membership, (b) is baptized, and (c) received in the hand of fellowship. While he did not know the practicing custom in the plaintiff church, it was conceivable that a child three years of age could be eligible for membership. Plaintiff's total *9 membership was approximately 900, of which between 500 and 600 were under 21.
Turning to the meeting of November 10, 1968, the record discloses that the decision to vote openly (by standing) was determined by a vote of 118 to 112. No one objected to children voting. The vote to sell the church property for $327,000 carried by a 136 to 104 vote. The proofs were vague as to the ages or the number of children who voted. A careful analysis of the proofs on this subject reveals that the number of children who voted could have been as few as 15 and as many as 60; the ages of the children voting ranged from seven years upward. I must disagree with the passing comment by the trial judge, and agreed with by the majority, that the votes cast by the children were insufficient to change the result. It is impossible to determine from the record how many children voted.
The issue is whether children under 21, even though members of the church, had the legal right to vote to sell church property. It is the public policy in New Jersey that persons under 21 years of age cannot effectively convey their interest in real estate, nor can they enter into mutually binding agreements (with some exceptions not relevant here). There is no logic in permitting an avoidance of such public policy by determining that anyone under 21, who is a member of a Baptist church, may authorize the trustees to do that which he may not do. If the Legislature intended to place Baptist churches in a special category to enable persons under 21 to vote on sale of church real property, it would have so stated in simple terms and not leave it to inference; e.g., an exception was created by N.J.S.A. 37:2-30, effective July 5, 1967, permitting an infant spouse to join the adult spouse in realty conveyances. See also N.J.S.A. 14A:5-22, dealing with infants under the General Corporation Act.
Considering the statutes dealing with religious societies as an integrated whole to determine the Legislature's intent, the conclusion is inescapable that it never intended *10 to remove the restrictions placed on conveyances by persons under 21. N.J.S.A. 16:1-1, dealing with religious societies in general, authorizes such societies to be incorporated by members over 21 who regularly contribute to its support, etc. They are permitted to adopt bylaws and rules consistent with law, for the regulation and management of their affairs, properties and institutions (N.J.S.A. 16:1-4(e)). The trustees, if authorized by a majority of the members present, on notice, may sell church properties (N.J.S.A. 16:1-6). N.J.S.A. 16:2-1 et seq., pertains specifically to Baptist churches, and by cross reference (N.J.S.A. 16:2-3 and 16:2-11), for our purposes, have the same powers given all religious societies under N.J.S.A. 16:1-1 et seq.
This public policy of an infant's incapacity to effectively contract or convey property finds expression in other statutory enactments. For example, procedure has been provided for the sale of infants' lands (N.J.S.A. 3A:16-4); generally, they are incompetent to make a will (N.J.S.A. 3A:3-1); persons seeking to incorporate under the General Corporation Act must be over 21 (N.J.S.A. 14A:2-6) and must be over 21 to be a director (N.J.S.A. 14A:6-1 who are the ones who may convey corporate property).
Considering the statutes relating to religious societies in a common-sense way, giving the language used its everyday commonly understood meaning, results in the conclusion that only members in good standing over 21 were eligible to vote on the sale of plaintiff's property. To permit children of tender years to have an equal voting voice with adults would be violative of the legislative intent and public policy.
I am fully aware that courts are reluctant to interfere with the propriety or regularity of the ecclesiastical or spiritual affairs of a religious society; however, they will not hesitate to do so where public policy, temporal or property rights are involved. Moorman v. Goodman, 59 N.J. Super. 181 (App. Div. 1960); Baugh v. Thomas, 56 N.J. 203 (1970). In the instant case, the right of children to *11 vote on the sale of church property does not affect the ecclesiastical or spiritual affairs of the church, but is concerned with its fiscal affairs and policies. In Randolph, supra, principally relied on by the court below, and the majority, the court set aside the membership vote for due process reasons  its statement that children who are members of a Baptist church have equal voting rights with adults was mere dicta.
For the reasons expressed, I would reverse and remand the matter with instructions that a new vote be taken of members over 21, on appropriate notice to all members.