266 N.J. Super. 66 (1993)
628 A.2d 789
NEW JERSEY EDUCATION ASSOCIATION, PETITIONER-APPELLANT,
v.
NEW JERSEY PUBLIC EMPLOYMENT RELATIONS COMMISSION AND NEW JERSEY PUBLIC EMPLOYMENT RELATIONS COMMISSION APPEAL BOARD, RESPONDENTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 14, 1993.
Decided July 8, 1993.
*67 Before Judges SHEBELL, A.M. STEIN and CONLEY.
Robert H. Chanin argued the cause the appellant (Bredhoff & Kaiser and Zazzali, Zazzali, Fagella & Nowak, attorneys; Mr. Chanin, Susan D. Carle and Richard A. Friedman, on the brief and reply brief).
Don Horowitz, Counsel, argued the cause for respondent New Jersey Public Employment Relations Commission Appeal Board.
Robert E. Anderson, General Counsel, filed a statement in lieu of brief on behalf of respondent New Jersey Public Employment Relations Commission.
The opinion of the court was delivered by SHEBELL, J.A.D.
*68 This is an appeal by petitioner, New Jersey Education Association (NJEA), the representative body of New Jersey teachers, from the Public Employment Relations Commission's (PERC) denial of petitioner's demand that PERC amend regulations adopted in 1987. NJEA demanded an amendment requiring that political-activity deductions only be required for nonmembers who object. Under the existing regulation the representative body is required to deduct the political-activity portion of the fee as to all nonmembers, not just those nonmembers who affirmatively object. PERC denied the petition on the ground that the regulation was required by language in the Supreme Court's opinion in Matter of Board of Educ. of Town of Boonton, 99 N.J. 523, 494 A.2d 279 (1985), cert. denied, 475 U.S. 1072, 106 S.Ct. 1388, 89 L.Ed.2d 613 (1986) (hereinafter "Boonton").
Petitioner contends that PERC misinterpreted Boonton, asserting that the case did not dispense with the prerequisite that a nonmember object in order to obtain a deduction from his or her fee. We affirm as we consider the holding in Boonton to be clear, and conclude that the PERC regulation is a reasonable implementation of that holding.
Before 1979, public employees who chose not to join their bargaining unit derived the benefits of representation without having to pay for them. In 1979 the Legislature amended the Employer-Employee Relations Act (Act) to permit collective bargaining agreements to "requir[e] the payment by all nonmember employees in the unit to the majority representative of a representation fee in lieu of dues for services rendered by the majority representative." N.J.S.A. 34:13A-5.5a. The amendment provided that the amount of the fee was to be calculated as follows:
b. The representation fee in lieu of dues shall be in an amount equivalent to the regular membership dues, initiation fees and assessments charged by the majority representative to its own members less the cost of benefits financed through the dues, fees and assessments and available to or benefitting only its members, but in no event shall such fee exceed 85% of the regular membership dues, fees and assessments. [N.J.S.A. 34:13A-5.5b.]
*69 The amendment further established a "demand and return" system, whereby a nonmember could, upon request, obtain a refund of that portion of his or her fee that the representative spent on political causes or on activities benefitting members only:
c. Any public employee who pays a representation fee in lieu of dues shall have the right to demand and receive from the majority representative, under proceedings established and maintained in accordance with section 3 of this act [N.J.S.A. 34:13A-5.6], a return of any part of that fee paid by him which represents the employee's additional pro rata share of expenditures by the majority representative that is either in aid of activities or causes of a partisan political or ideological nature only incidentally related to the terms and conditions of employment or applied toward the cost of any other benefits available only to members of the majority representative. The pro rata share subject to refund shall not reflect, however, the costs of support of lobbying activities designed to foster policy goals in collective negotiations and contract administration or to secure for the employees represented advantages in wages, hours, and other conditions of employment in addition to those secured through collective negotiations with the public employer. [N.J.S.A. 34:13A-5.5c (footnote omitted).]
The Legislature also established a procedure whereby any nonmember wishing to challenge the amount of his or her refund may obtain review before a three-member board (now known as the Appeal Board). N.J.S.A. 34:13A-5.6.
On June 15, 1987, following our Supreme Court's decision in Boonton, supra, PERC adopted regulations governing representation fees. N.J.A.C. 19:17-3.1 through -4.5. The key features of the regulations are (1) an advance deduction for expenses attributable to political activities (N.J.A.C. 19:17-3.4); (2) a written statement to nonmembers of how the deduction was computed (N.J.A.C. 19:17-3.3); (3) an opportunity for nonmembers to object that the fee still includes prohibited expenses (N.J.A.C. 19:17-4.1); (4) an escrow account in which the objecting nonmember's fees could be deposited pending resolution of the dispute (N.J.A.C. 19:17-4.2); and (5) procedures for resolving any dispute (N.J.A.C. 19:17-4.3).
The regulation pertinent to this appeal is N.J.A.C. 19:17-3.4(a). The effect of the regulation is to require that political expenditures be deducted in calculating the initial representation fee charged to all nonmembers, rather than only from the fees of *70 those nonmembers who expressly object and who invoke the demand-and-return system. The regulation reads:
(a) The maximum representation fee in lieu of dues assessed nonmembers in any dues year shall be the lower of:
1. Eighty-five percent of the regular membership dues, fees and assessments charged by the majority representative to its own members.
2. Regular membership dues, fees and assessments, charged by the majority representative to its own members, reduced by the percentage amount spent during the most recently completed fiscal year by the majority representative and any affiliate of the majority representative which receives any portion of the representation fees in lieu of dues paid or payable to the majority representative on benefits available to or benefitting only its members and in aid of activities or causes of a partisan political or ideological nature only incidentally related to the terms and conditions of employment. The amount shall be based upon the figures contained in the statement provided nonmembers prior to the start of the dues year in accordance with N.J.A.C. 19:17-3.3(a)1. [N.J.A.C. 19:17-3.4(a).]
During the rule-making proceedings, NJEA objected to this feature of the regulation, arguing that the statute permitted fee deductions only as to those nonmembers who affirmatively objected. PERC and the Appeal Board rejected NJEA's protest, citing their need to defer to the Court's decision in Boonton.
In January 1992, NJEA filed a petition asking PERC and the Appeal Board to amend N.J.A.C. 19:17-3.4 in order to allow a majority representative to collect the full representation fee from all nonmembers who did not file an objection, without having to make any initial deduction. See N.J.S.A. 52:14B-4(f) and N.J.A.C. 1:30-3.6. On March 18, 1992, the Appeal Board, by a vote of two to one, recommended that PERC deny the petition. On March 30, 1992, PERC accepted the Appeal Board's recommendation and denied the petition.
N.J.S.A. 34:13A-5.5b governs calculation of the representation fee; it permits a deduction for nonmembers only to account for services that benefit members only. If any nonmember wants an additional deduction for amounts spent on political or ideological causes, he or she must, after paying the full fee, affirmatively demand a partial refund. N.J.S.A. 34:13A-5.5c. This is the "demand-and-return" system. Should the employee dispute the amount returned, he or she may invoke the review procedure set *71 forth in N.J.S.A. 34:13A-5.6, which includes review by the Appeal Board. As petitioner notes, N.J.A.C. 19:17-3.4 is inconsistent with the literal language of the statute in that the regulation requires the representative to deduct the political-activity portion of the fee before assessing the fee against any nonmember employee  regardless of whether the employee objects and without regard to the demand-and-return system.
In Boonton, our Supreme Court was called on to determine the constitutional validity of the statutes at issue here, N.J.S.A. 34:13A-5.5 and -5.6, as amended in 1979. Boonton, supra, 99 N.J. 523, 494 A.2d 279. The Court rendered a saving construction of the demand-and-return feature of the Act. Id. at 548-52, 494 A.2d 279. The Court began by cautioning against a literal reading of the statutory language, which could be read "to allow a public-employee union annually to expend nonmember representation fees for political lobbying activities not permitted by the statute and thereafter to refund the portion of the fee improperly expended upon demand by an objecting nonmember." Id. at 548, 494 A.2d 279. Such a reading, noted the Court, would violate the Supreme Court's proscription in Ellis v. Railway Clerks, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984) and Abood v. Detroit Bd. of Educ., 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), of any system that allows even a temporary use of representation fees for activities to which employees might object. Boonton, supra, 99 N.J. at 548-49, 494 A.2d 279.
It would also be inconsistent with the "clear legislative purpose" "to minimize the likelihood that nonmember fees will be used for purposes proscribed by the statute." Id. at 549-50, 494 A.2d 279. The Court inferred that purpose from the "ceiling" the Legislature imposed on nonmember fees. See N.J.S.A. 34:13A-5.5b ("[i]n no event shall such fee exceed 85% of the regular membership dues, fees and assessments.").
Hence, the Court construed the demand-and-return feature of the Act as being

*72 intended to describe a specific category of expenditures that could not constitutionally be financed by nonmember fees. It was not designed to authorize the intentional collection of such fees from nonmembers on the theory that the money would later be recoverable through the rebate process. [Boonton, supra, 99 N.J. at 550, 494 A.2d 279.]
In order to achieve this overriding goal of insuring that no part of the fee is spent on objectionable activity, the Court decreed how the fee is to be computed, thereby rescuing the Act from its apparent defects:
Accordingly, we construe the statutorily mandated demand-and-return system to require that the majority representative compute the annual representation fee charged to nonmembers on the basis of the union's actual expenditures during the prior year. In calculating the fee, the majority representative must take into account the ratio that prohibited expenditures bore to total union expenditures in its previous year's budget. This will require the computation of the current year's representation fee for nonmembers to exclude that percentage of the union's prior year's budget attributable to expenses that the law prohibits the union to charge to nonmembers. [Id. at 550-51, 494 A.2d 279 (footnote omitted).]
The Court added in a footnote:
Accordingly, the maximum nonmember representation fee for the current year would be an amount equal to membership dues reduced by the percentage of impermissible expenditures in the prior year's budget. In no event may the nonmember fee exceed 85% of the dues charged to members. N.J.S.A. 34:13A-5.5(b). [Id. at 551 n. 5, 494 A.2d 279.]
The result is that the impermissible expense portion of the fee must be deducted before the fee is assessed. As a consequence, this relieves nonmembers of the burden to object.
Further, the Court acknowledged that a deduction based on the previous year's impermissible expenses might not fully insure that no such expenses would occur in the current year. Id. at 551, 494 A.2d 279. In order to avoid any such unconstitutional use of representation fees, the Court proposed that each majority representative devise "[r]efinements" to the demand-and-return system, such as "interest-bearing escrow accounts as a means of preventing the actual use of nonmember funds during the pendency of challenges to proposed expenditures." Ibid. Another possible remedy was to allow the union to make an "advance reduction" in the fee. Id. at 549, 494 A.2d 279 (quoting from Ellis, supra, 466 U.S. at 444, 104 S.Ct. at 1890, 80 L.Ed.2d at 439).
*73 Because the system adopted by the Boonton parties had been repealed pending oral argument, the Court did not have to rule on the validity of a particular system; it addressed only the facial validity of N.J.S.A. 34:13A-5.5 and -5.6. Id. at 549, 551, 494 A.2d 279. But the Court mandated the minimal standards which a constitutional demand-and-return system must meet:
The demand-and-return system itself, beyond the statutory requirement that the burden of proof be on the majority representative, must provide an uncomplicated, efficient, and readily accessible process for contesting the representation fee. Such a process must contain no features or conditions that would in any manner inhibit or restrain a nonmember employee from utilizing it. Obviously, the systems actually adopted by majority representatives will vary in their details, but any challenges to such systems must be measured by the standards imposed by the statute as construed here. [Id. at 551-52, 494 A.2d 279 (emphasis added).]
The effect of Boonton was to depart from the literal language of the statute, which would allow spending nonmember fees on political or ideological causes and only require a refund as to any nonmember employee who objects. In contrast, the Boonton Court recognized that any spending on such causes should be prohibited from the outset. The regulations under attack do indeed depart from the literal language of the Act. However, the Act must now be read as construed by the Court in Boonton. The Legislature has not sought to amend the Act to require nonmembers to object, despite the lapse of six years since the adoption of the regulation implementing this decision.
If, as petitioner urges, it was permitted to charge the entire fee and then wait for objections, the process would conflict with the holdings in Ellis and Boonton as the union would have the temporary and perhaps permanent use of funds to spend on activities that might be objectionable to a nonmember. See Lehnert v. Ferris Faculty Ass'n, 500 U.S. ___, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991); see also Chicago Teachers Union v. Hudson, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986).
PERC's decision denying appellant's petition to amend is affirmed.