850 A.2d 494 (2004)
369 N.J. Super. 572
In the Matter of HUNTERDON COUNTY, Appellant, and
CWA, Local 1034, Respondent.
Superior Court of New Jersey, Appellate Division.
Argued April 26, 2004.
Decided June 1, 2004.
*496 Gaetano M. De Sapio, Frenchtown, Hunterdon County Counsel, argued the cause for appellant.
Steven P. Weissman, Newark, argued the cause for respondent, CWA Local 1034 (Weissman & Mintz, attorneys; Mr. Weissman, on the brief).
Robert E. Anderson, General Counsel, New Jersey Public Employment Relations Commission, argued the cause for respondent, New Jersey Public Employment Relations.
George N. Cohen, Deputy Attorney General, argued for amicus curiae, Attorney General of New Jersey (Peter C. Harvey, Attorney General of New Jersey; Michael J. Haas, Assistant Attorney General, of counsel; Stephan Schwartz, Deputy Attorney General and Dennis J. Conklin, Senior Deputy Attorney General, on the brief).
Steven L. Willis, attorney for amicus curiae, Henry Wieczorek and twenty-seven other Hunterdon County non-union, public employees.
Before Judges FALL, PARRILLO and HOENS.
*495 The opinion of the court was delivered by
PARRILLO, J.A.D.
At issue is the constitutionality of a recent amendment to the New Jersey Employer-Employee Relations Act (EERA), N.J.S.A. 34:13A-1 to -5.9, entitling majority union representatives to have representation *497 or "agency" fees deducted from the paychecks of non-members provided certain statutory conditions are met. L. 2002, c. 46, § 1, effective August 1, 2002. Before the law was amended, public employers were required to negotiate over proposals to deduct representation fees, but a union could not obtain fees without the employer's agreement. N.J.S.A. 34:13A-5.5 and -5.6. In this case, CWA Local 1034(CWA), the majority representative of a negotiations unit of Hunterdon County's (County) non-supervisory employees, filed with the Public Employment Relations Commission (PERC) the first petition for agency fees under the amendment, N.J.S.A. 34:13A-5.5(a). This petition was filed on August 22, 2002, during the current term of the contract that had been negotiated before the effective date of the amendatory legislation. After appropriate investigation to determine whether the statutory conditions had been satisfied, PERC ordered the County to immediately institute a payroll deduction of an agency fee from the wages of non-member county employees in the negotiations unit. The County now appeals this order, challenging both the constitutionality of the amendment on First Amendment and other grounds, and the jurisdiction of PERC in this particular instance. We affirm.
Some background is in order. EERA was enacted in 1968, L. 1968, c. 303, to foster the prevention and prompt settlement of labor disputes in the public and private sectors. N.J.S.A. 34:13A-2. As originally enacted, EERA authorized public employee unions and required that they negotiate for all employees in the bargaining unit, regardless of union membership status. N.J.S.A. 34:13A-5.3. Thus, the right of exclusive representation was inextricably linked to the duty of fair representation. By the same token, "the Act afforded the bargaining unit's non-union public employees substantial benefits from the majority representative, without any cost obligation." In re Boonton Bd. of Ed., 99 N.J. 523, 528, 494 A.2d 279 (1985), cert. denied sub nom., Kramer v. Public Employment Relations Comm'n, 475 U.S. 1072, 106 S.Ct. 1388, 89 L.Ed.2d 613 (1986). See also New Jersey Turnpike Employees' Union v. New Jersey Turnpike Auth., 64 N.J. 579, 319 A.2d 224 (1974), aff'g per curiam 123 N.J.Super. 461, 303 A.2d 599 (App.Div.1973).
In an effort to curtail the "free ride" enjoyed by non-union members of the bargaining unit who received the benefit of services performed by the majority representative without sharing in the costs incurred, the Legislature amended the EERA in 1979, effective July 1, 1980, L. 1979, c. 477, § 2, to authorize the imposition of representation fees, not exceeding 85% of regular membership dues, fees and assessments, on non-union employees as a bargained-for provision of a negotiated collective bargaining agreement. N.J.S.A. 34:13A-5.5(a). Consistent with constitutional concerns, the statute required that the majority representative refund to non-union employees any part of the representation fee used "either in aid of activities or causes of a partisan political or ideological nature only incidentally related to the terms and conditions of employment or applied toward the cost of any other benefits available only to members of the majority representative." N.J.S.A. 34:13A-5.5(c). Thus, public employers were authorized to withhold the representation fee by payroll deduction, but only if the union had established and maintained a "demand and return" system that provided a pro rata refund of those expenditures that the statute expressly determined should not be shared by non-union member employees. N.J.S.A. 34:13A-5.6. The statute also required that the demand and return system provide for a procedure to review the *498 amounts refunded, with the burden of proof on the majority representative. Id. The statute further provided that non-union members have the right to appeal to a three-member board, consisting of a representative of public employers, a representative of public employee organizations, and a neutral member. Id.
This provision of a fair-share formula for non-union member payroll deductions was enacted so that the cost of union services that benefit both union and non-union members alike would not burden unfairly the members of the union. Boonton, supra, 99 N.J. at 538, 494 A.2d 279. As the Boonton Court noted, "[t]he original statute and its 1979 amendments demonstrate a state interest in promoting stability in public-sector employment by authorizing majority-unit representation of all employees for collective negotiations and grievance procedures, with the cost to be shared equitably among members and non-members." Id. at 539, 494 A.2d 279.
Significantly, although the 1979 law required public employers to negotiate over proposals to deduct representation fees from non-union members' paychecks, it did not compel an employer to agree to a proposal. In other words, while the Legislature made the agency fee a mandatory subject of negotiations, the public employer could still refuse to agree to a representation fee and thus block a majority representative's receipt of this revenue stream.
To further address the State's interest in promoting an equitable sharing of representation costs, and ultimately in promoting stability in public-sector employment, the Legislature amended section 5.5(a) of the EERA in 2002, L. 2002, c. 46, § 1, entitling majority representative unions to receive representation fees even though no agreement has been reached, provided two statutory conditions are met. N.J.S.A. 34:13A-5.5(a). Those conditions are that a union demonstrate both that a majority of employees in the bargaining unit are union members and that it maintains a "demand and return" system in conformity with N.J.S.A. 34:13A-5.5(c). Thus, in relevant part, the amendment provides that upon failure of a public employer and a public employees' union to reach an agreement concerning payment of "representation fees in lieu of dues[,]" or agency fees, by non-union employees,
the majority representative may petition the commission to conduct an investigation. If the commission determines during the investigation that a majority of the employees in the negotiations unit are voluntary dues paying members of the majority representative and that the majority representative maintains a demand and return system as required by subsection c. of this section and section 3 of P.L.1979, c. 477 (C.34:13A-5.6), the commission shall order the public employer to institute a payroll deduction of the representation fee in lieu of dues from the wages or salaries of the employees in the negotiations unit who are not members of the majority representative.
[N.J.S.A. 34:13A-5.5(a).]
Prior to August 1, 2002, the effective date of the amendment, and in accordance with the earlier version of N.J.S.A. 34:13A-5.5(a), the County and CWA negotiated the issue of agency fees on several occasions, but the County consistently refused to agree to its implementation. Therefore, no provision for the imposition and collection of such fees was ever contained in any collective bargaining agreement including the most recent contract negotiated between the County and CWA effective from January 1, 2000 to December 31, 2002. During the negotiations leading to this agreement, CWA specifically proposed an agency fee deduction for *499 non-members and the County refused, but agreed to reopen contract negotiations for the calendar year 2002 on that issue as well as wages. The reopened negotiations concluded in June 2002, without any agreement on the agency fee issue.
Consequently, on August 22, 2002, CWA filed with PERC the instant petition for agency fees, the first such petition filed under the recently enacted amendment. Included in the petition was a certification establishing that CWA is the majority representative of a negotiations unit of the County's non-supervisory employees; that CWA represents a unit of 375 employees; and that as of the filing of CWA's petition, 216 employees, or 57.6% of unit employees, were CWA members.
CWA also submitted a copy of its demand and return system for PERC's evaluation. That submission limits the agency fee to no more than 85% of regular membership dues, fees, and assessments charged to CWA members and explains that the fee is discounted by the percentage amount spent in the most recently audited year on benefits accruing only to members or in aid of activities or causes of a partisan political or ideological nature and only incidentally related to the terms and conditions of employment. The system guarantees that CWA will provide all persons subject to the agency fee with a written explanation of the basis for the fee, the amount of the next fee, and the dispute process. Included therein would be an itemization of the major categories of "discountable" expenditures for the International and Local Union, and verification by an independent auditor. The submission further provides that agency fees paid by an employee shall be held in an interest-bearing escrow account until the challenge is resolved, and that excess fee amounts will be refunded, following resolution of a challenge, to the employee with interest. Finally, the submission assures that the demand and return system is to be administered in conformity with representation fee rules promulgated by PERC (N.J.A.C. 19:17-3.3 and 3.4).
The County did not dispute that CWA satisfied the two statutory prerequisites for agency fee deduction, namely: (1) that a majority of its employees in the bargaining unit were voluntary dues-paying members of CWA; and (2) that CWA maintained the statutorily-required demand and return system. N.J.S.A. 34:13A-5.5. Rather, the County challenged the jurisdiction of PERC to hear CWA's petition, contending that the statute requires negotiations take place before deductions are ordered and no negotiations have taken place in this matter since the August 1, 2002 effective date of the amendatory legislation. The County also raised a constitutional challenge, arguing that the amended statute violates the First Amendment rights of non-union member public employees by mandating their involuntary affiliation with a union.
After appropriate investigation, PERC determined that CWA met all statutory conditions for agency fee deductions. PERC declined to consider the constitutionality of the 2002 amendment, Johnson v. Robison, 415 U.S. 361, 368, 94 S.Ct. 1160, 1166, 39 L.Ed.2d 389, 398 (1974); Fischer v. Bedminster Tp., 5 N.J. 534, 539, 76 A.2d 673 (1950), but rejected the County's jurisdictional argument, reasoning in part as to the latter:
Nothing in the bill's legislative history suggests an intent that a new round of negotiations would have to be conducted after the effective date of the statute or that negotiations before the bill's effective date would not satisfy the bill's negotiations requirement. Like the text, the legislative history is focused not on the duty to negotiate, but on the entitlement *500 to receive representation fees absent an agreement.
Next, we examine the labor relations implications of requiring additional negotiations after the parties have already negotiated but not reached an agreement to permit fees. We believe that requiring such negotiations would disserve the affirmative purposes of the new law without contributing to the overall collective negotiations process. The Legislature granted majority representatives the right (provided statutory conditions are met) to receive representation fees so that the cost of negotiating contracts and processing grievances would be equitably shared among all members. Accepting the County's position that the majority representative must wait until the next round of successor contract negotiations would require the majority representative and its members to shoulder all the costs of representing non-members. The legislative purpose would thus be defeated. And there would be little benefit to be had by delaying a claim under the new law until after a new round of negotiations. An employer that has already refused to agree to fee deductions in the last round of negotiations would have little reason to now agree. That is particularly so since an eligible majority representative would likely offer nothing in return for a negotiated agreement given the Legislature's decree that it no longer needs to reach an agreement to obtain fees. To require the parties to enter into negotiations when they have already negotiated over that issue and there is no basis to believe that they will reach agreement is not conducive to good labor relations.
Accordingly, on November 1, 2002, PERC issued an order directing the County to immediately commence payroll deductions for a representation fee.
On appeal, the County renews its jurisdictional and First Amendment claims. It also challenges the 2002 amendment as an unconstitutional delegation of legislative power and as "special legislation." Finally, in this appeal, the County argues for the first time that PERC erred in ordering implementation of the fee without first determining that CWA had complied with the agency's own rules.
We reject the jurisdictional claim substantially for the reasons set forth by PERC in its written decision of November 1, 2002. Suffice it to say, there is no statutory requirement that majority representatives have to wait until after existing contracts expire to demand either negotiations or an investigation by PERC to determine whether the statutory preconditions to the imposition of agency fees have been satisfied. The amendatory language is clear and the duty imposed on PERC, upon such a determination, is mandatory. Simply put, there is no legislative limitation as to the timing of negotiations or, alternatively, petitioning PERC. As such, we reject the County's position that a majority representative cannot invoke the new law until after the current contract expires. And, as a practical matter, we note that the last round of negotiations, held as recently as June, 2002, did not produce an agency fee agreement and we have no reason to expect, in light of the historical record, that the parties would be any more likely to reach an agreement if new negotiations on this subject were required.
We next turn to the County's constitutional claims. We first consider the challenge to the facial validity of the 2002 amendment in the context of first-amendment guarantees. "Our inquiry must be to determine if the statute permits an infringement on first-amendment rights, and *501 to the extent that it does, whether or not such infringement is clearly outweighed by a significant or substantial governmental interest that is advanced by the statute in question." Boonton, supra, 99 N.J. at 538, 494 A.2d 279 (citing NAACP v. Alabama, 357 U.S. 449, 463-65, 78 S.Ct. 1163, 1172-73, 2 L.Ed.2d 1488, 1500-01 (1958); American Communications Ass'n v. Douds, 339 U.S. 382, 399-400, 70 S.Ct. 674, 684-685, 94 L.Ed. 925, 944 (1950); Schneider v. Irvington, 308 U.S. 147, 161, 60 S.Ct. 146, 150, 84 L.Ed. 155, 164-65 (1939)).
The constitutionality of statutes mandating non-member financial support for union activities has been firmly established in a long line of cases from the United States Supreme Court. See, e.g., Railway Employees' Dep't. v. Hanson, 351 U.S. 225, 238, 76 S.Ct. 714, 721, 100 L.Ed. 1112, 1134 (1956) (upholding union shop agreement entered into pursuant to the Railway Labor Act and concluding that, in recognition of the legitimate governmental interest in eliminating the "free ride" problem, the requirement for financial support of the collective-bargaining agency by all who receive the benefits of its work is within the power of Congress under the Commerce Clause and does not violate the First Amendment); International Ass'n of Machinists v. Street, 367 U.S. 740, 744, 81 S.Ct. 1784, 1787, 6 L.Ed.2d 1141, 1147 (1961) (construing the Railway Labor Act to preclude the challenged use of dues paid by non-member plaintiffs pursuant to a union-shop agreement "to finance the campaigns of candidates for federal and state offices whom [plaintiffs] opposed, and to promote the propagation of political and economic doctrines, concepts and ideologies with which [plaintiffs] disagreed"); Brotherhood of Ry. Clerks v. Allen, 373 U.S. 113,122-23, 83 S.Ct. 1158, 1163-64, 10 L.Ed.2d 235, 242 (1963) (suggesting two practical measures by which the union could avoid constitutional conflicts, namely, the establishment of a refund system that would return to each dissenting employee the percentage of his mandatory contribution that equaled the ratio that union political expenditures bore to total union expenditures, and that future mandatory contributions from such employees be adjusted prospectively by a similar factor); Abood v. Detroit Bd. of Educ., 431 U.S. 209, 212, 232, 97 S.Ct. 1782, 1788, 1798, 52 L.Ed.2d 261, 270, 282 (1977) (recognizing the legitimate governmental interest in eliminating the "free ride" problem in the context of public employee unions, and upholding Michigan's "agency shop" statute that required all public employees in a bargaining unit represented by a public employees' union to pay the union, as a condition of State employment, a fee equal to union dues); Ellis v. Railway Clerks, 466 U.S. 435, 448, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428, 442 (1984) (clarifying the distinction between permissible and impermissible union expenses for purposes of mandatory non-union employee contributions); Lehnert v. Ferris Faculty Ass'n, 500 U.S. 507, 524, 111 S.Ct. 1950, 1961, 114 L.Ed.2d 572, 592 (1991) (holding that "a local bargaining representative may charge objecting employees for their pro rata share of the costs associated with otherwise chargeable activities of its state and national affiliates, even if those activities were not performed for the direct benefit of the objecting employees' bargaining unit").
As these cases make abundantly clear, statutes mandating payment of agency fees in lieu of union dues by non-union members pass constitutional muster on first-amendment grounds so long as: (1) the union receiving payments restricts the expenditures of those compulsory fees to activities germane to collective bargaining and negotiations; and (2) there is an established procedure to prevent the use *502 of such compulsory fees to fund political or ideological purposes not associated with the collective bargaining process. As the Court held in Chicago Teachers Union, Local No. 1 AFT, AFL-CIO v. Hudson, 475 U.S. 292, 303, 106 S.Ct. 1066, 1074, 89 L. Ed.2d 232, 245, while the government interest in labor peace is sufficiently compelling to support some infringement on the constitutional rights of non-members, "the fact that these rights are protected by the First Amendment requires that the procedure be carefully tailored to minimize the infringement."
The constitutionality of the 1979 amendments to EERA, New Jersey's agency fee statute, N.J.S.A. 34:13A-5.5 to -5.9, has been upheld in both federal court, Robinson v. State of New Jersey, 741 F. 2d 598 (3d Cir.1984) (Robinson I) and Robinson v. State of New Jersey, 806 F.2d 442 (3d.Cir.1986) (Robinson II), and our Supreme Court. Boonton, supra, 99 N.J. at 548, 494 A.2d 279. In Boonton, the Court held that the 1979 amendments to the EERA, authorizing imposition of agency fees on non-member employees as a negotiated-for provision of a bargaining agreement, "further[ed] the state's significant interest in public-employment stability without encroaching impermissibly on the rights of free speech and association that are protected by the [F]irst [A]mendment to the United States Constitution and by Article I of the Constitution of the State of New Jersey." Ibid. The Boonton Court also upheld the constitutionality of the EERA's demand and return requirement, with some modification. Id. at 552, 494 A.2d 279. Following the Court's decision in Boonton, PERC amended its regulations to implement the Court's directives. See New Jersey Educ. Ass'n v. New Jersey Public Employment Relations Comm'n, 266 N.J.Super. 66, 69, 628 A.2d 789 (App. Div.), cert. denied, 134 N.J. 569, 636 A.2d 526 (1993).
It is against this backdrop that we consider the County's first-amendment challenge to New Jersey's agency fee statute in its present form. The County argues that the underlying rationale supporting the historic constitutionality of agency fees is absent in the 2002 amendment, which mandates a mechanical imposition of agency fees, failing a negotiated agreement, without consideration of a local determination that such fee is necessary to achieve labor peace. We disagree.
The 2002 amendment retains the EERA's statutory scheme and simply removes the necessity for a negotiated agreement between the public employer and the union, thereby facilitating the elimination of the "free rider" problem and, ultimately, promoting labor peace and stability in public sector employment. In doing so, the amendment simply substitutes the local government subdivision's prerogative with a statewide public policy determination well within the Legislature's domain to make. See e.g., Hopewell Baptist Church or Newark, N.J. v. Gary, 111 N.J.Super. 1, 6, 266 A.2d 593 (App.Div. 1970) (stating that the Legislature is the governmental branch best equipped to discern and enunciate public policy); Ayres v. Dauchert, 130 N.J.Super. 522, 531, 328 A.2d 1 (App.Div.1974) (holding that where the Legislature has clearly spoken it is the privilege of that body to establish public policy).
In other words, the only relevant difference between the EERA upheld in Boonton and its most recent amendment is the elimination of the requirement that the imposition of mandatory agency fees be predicated always on an agreement reached between a public employer and a public employees' union. However, we discern no cognizable constitutional distinction between a statute that authorizes *503 the negotiation of compulsory fees and one that mandates them as an absolute condition of public employment provided, of course, there is a mechanism in place in both schemes protecting employees from coerced funding of political or ideological activity. Clearly, in those cases that upheld agency shop statutes, the element of a collective bargaining agreement as a predicate to compulsory payment of representation fees was not seen as an issue. And in a line of cases outside the labor union context, the United States Supreme Court has established that no such bargaining or agreement is necessary as a constitutional prerequisite, and that a State may constitutionally require the payment of analogous fees as an absolute condition of admission to the practice of law. See Keller v. State Bar of Cal., 496 U.S. 1, 110 S.Ct. 2228, 110 L. Ed.2d 1 (1990); Lathrop v. Donohue, 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961). If, then, there is no constitutional impediment to the State's dispensing entirely with an agreement as a prerequisite to imposing mandatory agency fees, a fortiori a statute, as here, that establishes a scheme that provides both for agreements and an alternative to them is constitutionally unobjectionable.
Most significant, the legitimate governmental interest underlying EERA's 1979 amendmentthe elimination of the "free rider" problemis equally compelling here. The 2002 amendment clearly furthers this interest by reducing the ranks of "free riders" and diminishing the inequities among public employees statewide. Moreover, the amendment does not impose statewide agency fees on all non-union-member public employees. Rather, it limits the mandatory imposition of such fees to instances where a union chooses to invoke the investigatory authority of PERC, represents a demonstrated majority of employees, and carefully protects the First Amendment interest of non-union-member employees through a "demand and return system" designed to prevent expenditures of agency fees on activities not germane to negotiations or otherwise related to the terms and conditions of public employment. In so limiting the imposition of agency fees, the 2002 amendment comports with first-amendment considerations and is constitutionally sound.
In a somewhat related constitutional attack, the County argues that an agency fee must be supported by a public employer's determination that it is "vitally necessary" to insure "labor peace" with the bargaining unit. We disagree. We know of no constitutional requirement of such findings through "local legislative determination." Rather, as previously noted, the amendment must be justified by legislative findings of important public policy interests that are substantially served by the statute and that clearly outweigh any repressive effect on first-amendment rights. Here, we find sufficient the Legislature's assessment of the important contribution of the agency fee to the system of labor relations generally established in the EERA and its significance in formulating an equitable sharing of the cost of representation. We also perceive no constitutional requirement of concurrence by a public employer in that legislative assessment. Indeed, the exposition of important public policy is for the Legislature as the paramount authority, Ayres, supra, 130 N.J.Super. at 531, 328 A.2d 1; Hopewell Baptist Church, supra, 111 N.J.Super. at 6, 266 A. 2d 593, to which the county, as a creature of the State, is subject. Clark v. Degnan, 83 N.J. 393, 400, 416 A.2d 816 (1980). While under EERA's previous version the County may have enjoyed the privilege of veto, there is no constitutional significance attached to the withdrawal of that prerogative in favor of the legislative judgment that entitlement to agency *504 feesupon satisfaction of statutory conditionsis necessary to achieve important public policy goals.
The County's next argument is essentially a reformulation of its previous constitutional claim. It argues that the 2002 amendment to the EERA resulted in an "unconstitutional delegation to the public employee unions ... of the constitutionally required local legislative determination of whether the implementation of an agency fee was necessary to secure `labor peace' in their governmental jurisdiction." We reject this contention summarily. In the first place, we have already found no constitutional requirement of any "local legislative determination." Second, contrary to the County's assertion, the Legislature has not delegated any authority to public employee unions. Rather, the delegation is to PERC, itself a creature of the Legislature and no less a proper instrumentality for the effectuation of legislative policy than the County, to investigate whether the union satisfies well-defined and narrowly limited statutory criteria. See Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 164, 393 A.2d 278 (1978).
We also reject the County's final constitutional claim that the 2002 amendment constitutes special legislation favoring public employee unions in violation of the State Constitution, N.J. Const., Article IV, § 7.
Legislation is deemed special " `when, by force of an inherent limitation, it arbitrarily separates some persons, places or things from others upon which, but for such limitation, it would operate. The test of a special law is the appropriateness of its provisions to the objects that it excludes.' " New Jersey State Firemen's Mut. Benevolent Ass'n v. N. Hudson Regional Fire & Rescue, 340 N.J.Super. 577, 589, 775 A.2d 43 (quoting Secaucus v. Hudson Cty. Bd. of Taxation, 133 N.J. 482, 494, 628 A.2d 288 (1993), cert. denied sub nom., City of Bayonne v. Town of Secaucus, 510 U.S. 1110, 114 S.Ct. 1050, 127 L. Ed.2d 372 (1994)), certif. denied, 170 N.J. 88, 784 A.2d 721 (2001). To distinguish special and general legislation a court must determine (1) the purpose and object of the enactment; (2) whether it excludes some who should be included; and (3) whether, as applied, the resulting classification rests upon any rational or reasonable basis relevant to the purpose of the statute. Jordan v. Horsemen's Benevolent and Protective Ass'n, 90 N.J. 422, 432, 448 A.2d 462 (1982); Brown v. Township of Old Bridge, 319 N.J.Super. 476, 508, 725 A.2d 1154 (App.Div.), certif. denied, 162 N.J. 131, 741 A.2d 99 (1999). In other words, the "test of special legislation requires [consideration of] whether any person or entity excluded by the statutory classification should have been included because there was no rational explanation for the exclusionary classification." City of Jersey City v. Farmer, 329 N.J.Super. 27, 43, 746 A.2d 1018 (App.Div.), certif. denied, 165 N.J. 135, 754 A.2d 1211 (2000).
On its face, the 2002 amendment applies to all public employee unions, all public employers and all public employees and excludes no person or entity arbitrarily. The fact that the Legislature did not require all public employees to pay an agency fee is not dispositive. The relevant inquiry is whether or not the legislation covers all public employees represented by majority representatives. It therefore does not "grant favors to some at the expense of others." Jordan, supra, 90 N.J. at 433, 448 A.2d 462. Moreover, the legislation clearly bears a rational relationship to an important public interest in labor peace and avoiding "free riders."
*505 Lastly, the County contends that PERC's implementation of the 2002 amendment was unreasonable because PERC (a) failed to order the County and CWA to engage in another round of unsuccessful bargaining over agency fees and (b) failed to order CWA to comply with the relevant administrative regulations requiring notice of fee amount and method of calculation, prior to ordering deductions to commence. This argument is without merit.
The EERA imposes a fixed fee amount not to exceed 85% of dues paid by voluntary members. N.J.S.A. 34:13A-5.5(b). Our Supreme Court, in Boonton, upheld the EERA's agency fee cap and imposed a system of advanced reductions based on the previous year's expenditures. 99 N.J. at 549-50, 494 A.2d 279. Thus, PERC's determination that additional negotiations were unnecessary was reasonable.
So too, a notice requirement and an explanation of fees are both provided for in CWA's demand and return system, in compliance with N.J.A.C. 19:17-3.1 to -4.5. Additionally, PERC found that CWA's demand and return system complies with N.J.S.A. 34:13A-5.5 and 5.6.
Ultimately, PERC's implementation of the 2002 amendment following CWA's petition, including its subsequent investigation, conformed to statutory mandates and was neither arbitrary, capricious, nor unreasonable. The 2002 amendment requires that PERC determine whether CWA satisfied the two conditions for imposition of an agency fee. Both conditions were satisfied. PERC conducted an investigation and determined that: (1) 57.6% of County employees in the bargaining unit were CWA members when the petition was filed; and (2) that CWA's demand and return system met all of the requirements set forth in the relevant administrative regulations, N.J.A.C. 19:17-3.1 to -4.5. Those regulations, in turn, were designed to fulfill all constitutional requirements associated with protection of non-member fee payers' first-amendment concerns by limiting permissible classes of union expenditures of mandatory agency fees and providing for a system through which disputes could be presented and resolved. The County did not challenge the results of PERC's investigation. It did not dispute that both statutory conditions were satisfied by CWA.
The 2002 amendment requires that upon satisfaction of the two conditions for imposition of an agency fee, "the Commission shall order the public employer to institute a payroll deduction of the representation fee...." N.J.S.A. 34:13A-5.5(a). Here, both conditions having been satisfied, PERC issued the order now being challenged. The law requires no more, and PERC's implementation satisfied its statutory obligation.
The November 2, 2002 order of PERC is affirmed.